468 So.2d 370 (1985)
Ricky J. CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. BA-111.
District Court of Appeal of Florida, First District.
April 18, 1985.
Rehearing Denied May 30, 1985.
Michael Allen, Public Defender, and Kenneth L. Hosford, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Gary L. Printy, Asst. Atty. Gen., for appellee.
NIMMONS, Judge.
Carter claims that his kidnapping conviction should be reversed because his actions purporting to constitute the kidnapping charge were inconsequential or inherent in the armed robbery of which he was also convicted and that the separate kidnapping conviction was impermissible under the Supreme Court's holding in Faison v. State, 426 So.2d 963 (Fla. 1983). We disagree and affirm.
The defendant and an accomplice accosted the victim outside her apartment and, armed with guns, forced their way into her apartment. The robbers pushed the victim down on the couch and forcibly removed her necklaces from her neck. She was told that she would be killed if she screamed. The defendant and his accomplice ransacked the apartment, taking jewelry and other items, after which the defendant ordered the victim into the bathroom.
The defendant then entered the bathroom and told the victim he was going to tie her up so that he and his accomplice could get away. The victim testified as to what transpired thereafter:
A I told him he didn't have to tie me up, I wasn't going to stop them from getting away. He said, I'm going to tie you up and you can get aloose. We just want to get away. So he got a belt that I had to a dress in the hall closet and he tied my arms up to the towel rack and then they left.
Q Okay. How did he tie you up?

*371 A He told me to put my arms out like this here and he wrapped the cord, the belt around my arms and then tied it to the towel rack.
Soon after the robbers left, the following transpired according to the victim:
Q Okay. What happened next?
A The phone went to ringing and I popped the thing, the belt from the towel rack, and then I twist my arms and got it out and I 
Q Did it hurt you when you popped it?
A Yes, I had bruises on my arm.
* * * * * *
Q What happened then?
A I ran to the phone and picked the phone up. It was my brother. He asked me where I had been and I say  and I started crying and screaming and I told him what happened and he came round there.
Section 787.01(1)(a)2., Florida Statutes (1983), under which the defendant was charged, provides:
(1)(a) "Kidnapping" means forcibly, secretly or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
* * * * * *
2. Commit or facilitate commission of any felony.
Under Faison v. State, supra, the confinement or movement necessary to facilitate the commission of another crime within the meaning of the above statute: (1) must not be slight, inconsequential and merely incidental to the other crime; (2) must not be of the kind inherent in the nature of the other crime; and (3) must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection. Id at 965.
The fact that the defendant knew, when he tied up the victim, that she would be able to free herself by the use of determined effort  to the point of bruising her arms  does not, in our view, disqualify this case from meeting the Faison criteria. The defendant's purpose in tying up the victim was to buy time in making a "clean getaway." The fact that he was "charitable" enough with his victim to buy himself only a little time matters not. We have considered the authorities relied upon by the defendant, including Friend v. State, 385 So.2d 696 (Fla. 1st DCA 1980), and Chaney v. State, 464 So.2d 1261 (Fla. 1st DCA 1984), and find them to be distinguishable.
AFFIRMED.
MILLS, J., concurs.
PEARSON, TILLMAN, (Ret.) Associate Judge, dissents.