UNITED STATES of America, Plaintiff-Appellee,

v.

Fernando FERNANDEZ, Rafael Enrique Franjul, a/k/a Frank Sinatra, Defendants-Appellants.

No. 85–5311.

United States Court of Appeals, Eleventh Circuit.

Aug. 26, 1986.

Roy E. Black, Black & Furci, P.A., Frank C. Furci, Miami, Fla., for Fernandez.

Ronald A. Dion, Entin, Schwartz, Dion & Scalfani, Jonathan B. Blecher, North Miami Beach, Fla., for Franjul.

Leon Kellner, U.S. Atty., Barbara Petras, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and GIBSON *, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

The appellants, Fernando Fernandez and Rafael Franjul, challenge their convictions under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq,* and under the federal statutes prohibiting conspiracies to import marijuana and to possess marijuana with the intent to distribute, 21 U.S.C. §§ 952, 963, 841, 846. For the reasons discussed below, we affirm the RICO convictions and Franjul's marijuana conspiracy convictions, but reverse Fernandez' marijuana conspiracy convictions.

A federal grand jury returned a multi-count indictment charging several individuals, including the appellants, with racketeering and other related crimes as a result of their association with and participation in an illegal narcotics enterprise. Fernando Fernandez was charged in Count I with conspiracy to violate RICO, in Count II with a substantive violation of RICO, in Count IV with conspiracy to import marijuana, and in Count V with conspiracy to possess marijuana with intent to distribute. As RICO predicate acts for both the RICO conspiracy and the substantive violation, Fernandez was charged with conspiracy to kidnap Rogelio, a man believed by Fernandez to have stolen the enterprise's marijuana; conspiracy to murder Rogelio; and, as

one predicate act, the marijuana conspiracies charged in Counts IV and V.[1] Rafael Franjul was charged in Count I with conspiracy to violate RICO and in Counts IV and V with conspiracy to import marijuana and conspiracy to possess marijuana with the intent to distribute. As predicate acts for the RICO conspiracy, Franjul was charged with conspiracy to kidnap Moises Perez, a man believed by Franjul to be a government informant; conspiracy to murder Perez; and, as one predicate act, the marijuana conspiracies charged in Counts IV and V.

## I. COCONSPIRATOR STATEMENTS

Both Fernandez and Franjul contend that the district court erred in failing to make separate *James* determinations as to each conspiracy charged. We address this issue as a preliminary matter so that we can properly review the evidence against them.

In *United States v. James,* 590 F.2d 575, 581 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the court held that coconspirator statements introduced pursuant to Fed.R. Evid. 801(d)(2)(E) are not properly admitted until, as a preliminary matter, the government shows substantial independent evidence of a conspiracy. More specifically, the substantial independent evidence must show that (1) a conspiracy existed, (2) the declarant and the defendant were members of the conspiracy, and (3) the statements were made in furtherance of the conspiracy. *Id.* *See* Fed.R.Evid. 801(d)(2)(E). The district court has discretion to admit the statements subject to proof of these three requirements during the course of the trial. *United States v. Hewes,* 729 F.2d 1302, 1312 (11th Cir.1984), *cert. denied, Caldwell v. U.S.,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

The district court reserved ruling until the close of the government's case, at which time it determined that the govern-

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Fernandez was also charged, as a predicate act, with conspiracy to murder a man named Prieto. The government dismissed this charge, however, during trial.

ment had satisfied the *James* standard as to the RICO conspiracy (Count I). The district court again reserved ruling on the admissibility of coconspirator statements as to the separately charged marijuana conspiracies (Counts IV and V), but indicated a belief in the government's argument that all coconspirator statements were admissible as to all counts since the *James* standard had been satisfied as to the RICO conspiracy. At the conclusion of the evidence, the defendants renewed all outstanding motions. The district court did not determine whether the *James* standard had been satisfied as to Counts IV and V. Fernandez and Franjul contend that the district court erred in this respect. They argue that in the absence of a *James* determination the coconspirator statements regarding the separately charged marijuana conspiracies should not have been admitted as evidence against them on Counts IV and V.

Failure to make a specific *James* determination is harmless error if the record demonstrates admissibility. *United States v. Monaco*, 702 F.2d 860, 878 (11th Cir. 1983); *United States v. Bulman*, 667 F.2d 1374, 1380 (11th Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). After reviewing the record, we conclude that the record does not demonstrate admissibility of the coconspirator statements against Fernandez on the separately charged conspiracies to import marijuana and possess marijuana with the intent to distribute as alleged in Counts IV and V. We hold that the independent evidence does not establish the existence of these conspiracies, the first *James* requirement. We hold, however, that the record demonstrates admissibility of the coconspirator statements against Franjul on the separately charged marijuana conspiracies.

▮ The government acknowledged during oral argument that the only evidence that Fernandez conspired to import mari-

juana was the following portion of his conversation with Cheo on November 5, 1983:

CHEO:[2] I asked for you to come ... do you know anything about a plane, a DC–6 something like that, that can be obtained somewhere, to drop it over there. (whispering) (UI) [unintelligible] the farm....

FERNANDEZ: A DC–6? Damn, that's a big plane.

CHEO: A DC–6, yes, a DC–3.

FERNANDEZ: A DC–3 is also big.

CHEO: (UI)

FERNANDEZ: 6,000 pounds, 4,000 something.

CHEO: No, 4,500 not 6,000, so it won't fall.

FERNANDEZ: Well, you know that I don't have any connections with that.

CHEO: I have, I have ...

FERNANDEZ: I know a pilot.

....

CHEO: .... I need, I was looking for, to see if I get a small plane.

FERNANDEZ: Now, I know a pilot who's very bold, he's a good sort, Luis ... "El Chino Luis", but that I know, well, unless he has some contacts with somebody.

CHEO: One thing I was going to tell you, Fernando [Fernandez] (UI).

Appendix to Appellant's Brief at 26–28. Even when considering the coconspirator statements here, we cannot say that this discussion amounted to an agreement to import marijuana. Merely providing Cheo with the name of a pilot in response to Cheo's inquiry about a plane that was capable of transporting a hypothetical load of marijuana does not constitute an agreement.

The government also acknowledged during oral argument that the references to marijuana ventures were the only evidence that Fernandez conspired to possess marijuana with the intent to distribute. The vague discussions of past marijuana ven-

---

**2.** Cheo was an indicted coconspirator who is not involved in this appeal. See Part II for more details.

tures cannot be considered evidence upon which a conviction for conspiracy to possess marijuana may be upheld.

█ The independent evidence does not demonstrate the existence of conspiracies in this case. Therefore, the coconspirator statements concerning the marijuana conspiracies should not have been admitted against Fernandez as evidence on Counts IV and V. Although inadmissible as to Counts IV and V, these coconspirator statements are admissible as to the RICO conspiracy. The RICO conspiracy is a broad concept and encompasses a great variety of conduct. *United States v. Pepe,* 747 F.2d 632, 659 (11th Cir.1984). It is not disputed that the purpose of the enterprise involved in this case was to import and distribute marijuana. The coconspirator statements concerning the alleged marijuana conspiracies show Fernandez' previous and continuing relationship to the enterprise, and therefore are admissible to that extent.

Fernandez also argues that the government failed to prove that he agreed to commit the kidnapping and murder of Rogelio. We disagree. As discussed in more detail in Part III of our opinion, the independent evidence demonstrates the existence of these conspiracies.

█ With respect to Franjul, we hold that the record demonstrates admissibility of the coconspirator statements against him as to the separately charged marijuana conspiracies alleged in Counts IV and V. Franjul's own statements supply the requisite independent evidence of the existence of the agreements to import and to possess marijuana with the intent to distribute. *See United States v. Zielie,* 734 F.2d 1447, 1457 (11th Cir.1984) ("a defendant's own statements constitute independent evidence for purpose of applying the *James* standards"), *cert. denied,* —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). During his conversation with Cheo on November 19, 1983, Franjul demonstrated his association with Cheo and the enterprise. Franjul revealed his thorough knowledge of specific dates and times of various shipments of marijuana, as well as his knowledge of the

people involved in those shipments. He also revealed his participation in one particular shipment. Franjul stated that he had posted bond for the employees who were arrested while attempting to import several thousand pounds of marijuana. More importantly, Franjul revealed the conspiracy to import marijuana. He reported to Cheo: "I ... I'm planning to go with one of those small airplanes, nine thousand, nine thousand, nine thousand." Appendix to Appellant's Brief at 1. Franjul admitted during cross-examination that he was referring to the transportation of nine thousand pounds of marijuana by plane. Record XXIX at 164. Franjul was reporting the specific method of importation and the amount to be imported. We hold that this evidence and the reasonable inferences that can be drawn from it demonstrate the existence of the separately charged marijuana conspiracies, that Cheo and Franjul were members of the conspiracies, and that the statements were made in furtherance of the conspiracies. Therefore, we conclude that the district court did not err in admitting these statements against Franjul on the marijuana conspiracies separately charged in Counts IV and V. These statements are also admissible against Franjul as evidence of the broader RICO conspiracy charge in Count I. The statements show his previous and continuing relationship to the enterprise.

In sum, we hold that the record does not demonstrate admissibility of the coconspirator statements against Fernandez concerning the marijuana conspiracies charged in Counts IV and V. The statements are admissible, however, on the RICO conspiracy charge. We hold that the record demonstrates admissibility of coconspirator statements against Franjul concerning the marijuana conspiracies charged in Counts IV and V. We also hold that these statements are admissible against Franjul on the RICO conspiracy charge. Having made the preliminary determinations, we now review the evidence.

## II. EVIDENCE

The evidence reviewed in a light most favorable to the government, *see Glasser v.*

*United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), establishes the following facts. The mastermind of the enterprise was Jose Manuel Fernandez-Toledo, also known as Cheo Fernandez (referred to here as Cheo). Cheo was under investigation by federal officials, who had placed an informant in Cheo's organization, and who were recording conversations in Cheo's office. The recordings revealed that marijuana was being imported on a daily basis and stored in stash houses. The recordings also revealed that Cheo was becoming frustrated by the seizures of his marijuana and the arrests of his offload personnel. As a result, Cheo became interested in changing his importation methods.

Cheo's desire to import by air instead of by sea was disclosed in his conversation with appellant Fernandez in Cheo's office on November 5, 1983. Cheo and Fernandez discussed importing marijuana. During the conversation, Fernandez provided Cheo with the name of a "very bold" pilot. The discussion then turned to a previous marijuana venture that was mishandled by other members of the enterprise. The crux of this part of the conversation was that the enterprise's creditors wanted their money. The discussion turned to another venture in which the enterprise's marijuana had been stolen. Fernando initiated this discussion, complaining to Cheo that he could not sleep because of "Rogelio." The two concluded that it was Rogelio who had stolen their marijuana. The two agreed that Rogelio must be located, abducted, taken to the farm, and killed. Fernando and Cheo then planned how Rogelio would be abducted and killed.

Cheo engaged in a similar conversation with appellant Franjul. On November 19, 1983, Franjul met with Cheo at Cheo's office. At that meeting, Franjul reported his plan to import nine thousand pounds of marijuana by airplane. Franjul then told Cheo that he believed that the government had an informant in Cheo's organization, one who was very close to Cheo. Although Cheo was reluctant to acknowledge the existence of an informant in the organization, Franjul finally convinced him that it was

true. The two men concluded that the informant was Moises Perez. Cheo and Franjul agreed that Perez must be found, taken to the farm, and killed. They then planned how Perez would be abducted and killed.

Following a bench trial, Fernandez and Franjul were convicted as charged in the indictment. Fernandez was sentenced to twelve years incarceration for the RICO conspiracy and for the substantive violation of RICO (Counts I and II), to run concurrently. He was sentenced to five years probation for the marijuana conspiracies (Counts IV and V), to run concurrently with each other and consecutively to the sentences on Counts I and II. Franjul was sentenced to twelve years incarceration on Count I, and five years probation on Counts IV and V, to run concurrently with each other and consecutively to Count I.

On appeal, in addition to the *James* contentions already discussed, Fernandez contends that the evidence is insufficient to sustain his convictions on all counts. Franjul contends that the conspiracies to kidnap and to murder Perez should be considered one predicate act, which would not constitute the requisite "pattern of racketeering activity." Both Fernandez and Franjul contend that the district court erred in ruling that the government need not disclose certain technical information concerning the intercepted conversations.

## III. SUFFICIENCY OF THE EVIDENCE

■ Fernandez contends that the evidence is insufficient to sustain his marijuana conspiracy convictions as charged in Counts IV and V. Because we concluded for purposes of *James* determinations that the evidence did not demonstrate the existence of conspiracies by Fernandez to import marijuana and to possess marijuana with the intent to distribute, we hold that the evidence also is insufficient to sustain his convictions on these charges. The essential element in a prosecution for such conspiracies is an *agreement* between two

or more persons to violate narcotics laws. *United States v. Figueroa,* 720 F.2d 1239, 1244 (11th Cir.1983); *United States v. Lee,* 694 F.2d 649, 652 (11th Cir.), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983).[3] As we said, that essential element is missing in this case. We recognize, as the government argues, that detailed contract language is seldom used by narcotics conspirators. More specific language is required, however, than merely "I know of a pilot who is very bold ... Luis ... 'El Chino Luis.' " We also recognize that a conspiracy may be proved by circumstantial evidence. *United States v. Walker,* 720 F.2d 1527, 1538 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). By his own statements, Fernandez was involved in past marijuana ventures with Cheo. As we said, however, this evidence alone is insufficient to show a conspiracy to possess marijuana with the intent to distribute in this case. Consequently, we reverse Fernandez' convictions on Counts IV and V.

Next, Fernandez challenges his RICO convictions. Fernandez contends that the evidence is insufficient to sustain his convictions for a RICO conspiracy (Count I) and for a substantive violation of RICO (Count II). As a result of our decision concerning the marijuana conspiracies, only two predicate crimes remain that form the basis of these counts. The predicate crimes are the conspiracy to kidnap Rogelio and the conspiracy to murder Rogelio. Specifically, Fernandez argues that the government failed to establish any agreement on his part, that the conspiracies to kidnap and murder should be treated as one act, and that the evidence does not demonstrate that he was associated with Cheo's enterprise.

Again, the basis of Fernandez' RICO convictions was his conversation with Cheo on November 5, 1983. Fernandez initiated that portion of the conversation in which they discussed the kidnapping of Rogelio. Fernandez complained to Cheo that he was having trouble sleeping because of Rogelio. Fernandez and Cheo agreed that it was Rogelio who had stolen their marijuana during a previous venture. Rogelio was the mechanic who had prepared the truck that was used in transporting the marijuana, and he also knew the location of their "stash house." Fernandez stated that Rogelio must be killed, but that he did not "have a place to do it." Fernandez explained to Cheo his plan of abducting Rogelio. Fernandez would tell Rogelio that they wanted him to look at some cars, and when Rogelio "gets in the car, take him to the ranch and then say to him, look brother, you know how it is, you were the one who stole ... the material, the grass, where is your buddy and if you don't talk then you'll go under, now look how it is. You're going to talk and you're also going to give money." Fernandez did not own a ranch, but he knew that Cheo owned one farm and had access to another. Cheo told Fernandez that a problem existed with Fernandez' plan. Cheo warned that "if that guy is grabbed ... [he] can't be let [go] anymore. He can't come here." Fernandez agreed. Cheo made himself very clear: Rogelio "must die, even if he talks ... or doesn't talk." Fernandez agreed. Cheo then suggested an alternate plan—sending Rogelio a letter threatening him, warning him that he was being watched, and demanding to know the whereabouts of his accomplice. Cheo reminded Fernandez that Rogelio still "has to be killed." Fernandez agreed:

FERNANDEZ: He has to be hit.

---

**3.** To prove a conspiracy to import a controlled substance in violation of 21 U.S.C. § 963, the government must show "(1) the existence of an agreement (2) to import (3) a controlled substance (4) into the United States and (5) the defendant's knowing and voluntary participation in the agreement." *United States v. Boldin,* 779 F.2d 618, 619 (11th Cir.) (modifying *United States v. Boldin,* 772 F.2d 719, 727 (11th Cir.1985)), *cert. denied,* —— U.S. ——, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986). To prove a conspiracy to possess a controlled substance in violation of 21 U.S.C. § 846, the government must "show (1) the existence of an agreement (2) to possess (3) with intent to distribute (4) a controlled substance and (5) the defendant's knowing and voluntary participation in the agreement." *Id.*

CHEO: He has to get hit and set fire to him, later won't find him. . . .

. . .

Look a dead person found, dead person investigated, no dead man found, no dead man investigated.

FERNANDEZ: Right. That's correct. That's right.

Fernandez and Cheo worked out the details of Cheo's plan. Fernandez expressed concern that the letter might alert Rogelio, and give him the opportunity to "leave town." Cheo assured Fernandez that Rogelio would always be watched. Fernandez also expressed concern about whether Rogelio would know who sent the letter. Cheo assured Fernandez that the letter would clearly state that "these are the owners of the material (marijuana), we're ready for you, looking in your direction." Cheo and Fernandez then planned how Rogelio would be abducted. Rather than using the automobile ruse, Cheo told Fernandez that his men would "take Rogelio in front of people, and get a hold of him, tie him, pick him up and take him away." Fernandez agreed: "Well man, there's no other alternative, so you know. There's no other alternative. Just that one." Then Fernandez told Cheo that he (Fernandez) would do the actual killing:

FERNANDEZ: . . . . Cheo, if he has to be hit, he'll be hit, I'll hit him myself. (Pause) But I need a place to put him.

CHEO: Yes that can be done, it can be done.

Fernandez then explained that the place must impress upon Rogelio the seriousness of the situation and cause him to "talk about everything." Fernandez detailed what he would say to force Rogelio to talk: "Look you're imprisoned here, . . . you better talk about everything if you want to save yourself, and if he doesn't talk, or speaks, or if he spits everything out and declared everything, hit him, hit him and bury him." The two agreed that their reputations were at stake.

Fernandez argues that this conversation does not show that he agreed to violate RICO, or that he agreed to kidnap and murder Rogelio. At most, he argues, the conversation shows that he and Cheo were mad at Rogelio and that they made "rash statements" about him.

■ To establish a conspiracy to violate RICO, the government must prove that the defendant, by his words or actions, objectively manifested an agreement to participate, directly or indirectly, in the affairs of the enterprise, through a pattern of racketeering activity. *United States v. Bright*, 630 F.2d 804, 834 (5th Cir.1980). A pattern "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5) (1982). "Racketeering activity" is defined as "any act or threat involving murder, kidnapping, . . . which is chargeable under State law." 18 U.S.C. § 1961(1)(A) (Supp.1984) Conspiracy to kidnap and conspiracy to murder are chargeable under Florida law. *See* Fla. Stat.Ann. §§ 777.04, 787.01, 782.04 (Supp. 1986).

■ We hold that the above conversation between Cheo and Fernandez clearly demonstrates an agreement by Fernandez to participate in the affairs of Cheo's enterprise. Fernandez knowingly agreed to further the objective of the enterprise (narcotics smuggling) by agreeing to kidnap and murder an individual who had stolen from the enterprise and whose conduct, if allowed to go unpunished, would compromise the integrity and reputation of the enterprise. By his own words, Fernandez agreed to commit the two predicate acts necessary to form the basis of the RICO charges. Under Florida law, the conspiracy is complete "once the intent is formed and the agreement made." *Ethridge v. State*, 415 So.2d 864, 864 (Fla.Ct.App.1982). The government need not prove that the defendant undertook any overt act in furtherance of the conspiracy. *Id.* The evidence amply demonstrates Fernandez' intent and agreement to forcibly abduct and confine Rogelio against his will with the intent to commit or facilitate murder or to inflict bodily harm upon him. *See* Fla.Stat. Ann. § 787.01(1)(a) (Supp.1986) (Florida kidnapping statute). The evidence also clearly demonstrates Fernandez' intent and agree-

ment to unlawfully kill Rogelio. *See* Fla. Stat.Ann. § 782.04 (Supp.1986) (Florida murder statute). Fernandez not only agreed that Rogelio must be killed, but also that he (Fernandez) would do the killing himself. Therefore, we conclude that the evidence sufficiently shows an agreement by Fernandez to violate RICO through the agreements to kidnap and murder Rogelio.

■ Fernandez also argues that the conspiracies to kidnap and murder the same person should be considered one crime. He argues that the planned confinement of Rogelio merely would have been incidental to the murder. We disagree. The Florida Supreme Court has addressed the issue and cited with approval the following test:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>
> (b) Must not be of the kind inherent in the nature of the other crime; and
>
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Faison v. State,* 426 So.2d 963, 965 (Fla. 1983) (quoting *State v. Buggs,* 219 Kan. 203, 215–17, 547 P.2d 720, 731 (1976)). The evidence in this case satisfies the above test. Both Cheo and Fernandez agreed that abducting Rogelio and confining him

at the farm would serve three purposes, which were independent of the act of killing Rogelio. The abduction and confinement would allow them to obtain information from Rogelio, would serve as an example to the community, and would lessen the detection of the murder. The confinement here would not have been merely incidental to or inherent in the killing of Rogelio. The confinement clearly would have had independent significance.[4] Accordingly, we hold the evidence demonstrates two predicate crimes chargeable under Florida law, constituting the requisite pattern of racketeering activity.[5]

Although Franjul does not challenge the sufficiency of the evidence, he, like Fernandez, argues that the conspiracies to kidnap and murder should be treated as one predicate crime. We need not address Franjul's argument. Even if the conspiracies to kidnap and murder government informant Moises Perez are considered one predicate crime, the marijuana conspiracies constitute the other predicate crime, forming the requisite pattern of racketeering activity.[6]

■ Finally, Fernandez argues that the government did not prove that he was associated with Cheo's enterprise. We disagree. Fernandez' own statements to Cheo about their past marijuana ventures reveal his association with the enterprise. More importantly, his statements concerning Rogelio are dispositive of this association.

---

**4.** The movement from Rogelio's house or place of business to the farm would certainly amount to more than an inconsequential movement like that found in *Chaney v. State,* 464 So.2d 1261, 1263 (Fla.Ct.App.1985), where the court held that placing robbery victims in a bathroom, during and after the robbery, from which they escaped within minutes or seconds, did not amount to kidnapping. Indeed, the movement and confinement of Rogelio in this case would be much more consequential than the movement in *Carter v. State,* 468 So.2d 370, 371 (Fla.Ct.App.1985), where the court held that the movement of a robbery victim from outside to inside a building may not be characterized as inconsequential.

**5.** Two isolated acts of racketeering, without more, do not constitute a pattern. "It is [the]

factor of *continuity plus relationship* which combines to produce a pattern." *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (emphasis in original) (quoting S.Rep. No. 91–617, p. 158 (1969)). In this case, Fernandez's acts were not isolated. The conspiracies to kidnap and murder Rogelio were closely related to each other and to the ongoing objective of narcotics smuggling.

**6.** *See supra* note 5. The marijuana conspiracies and the conspiracies to kidnap and murder the informant were not isolated acts. Franjul entered into these conspiracies for the purpose of furthering the enterprise's objective of narcotics smuggling.

In sum, we hold that the evidence is insufficient to sustain Fernandez' marijuana conspiracy convictions. The evidence is sufficient, however, to sustain his RICO convictions. The evidence demonstrates Fernandez' intent and agreement to participate in the affairs of the enterprise through his agreements to kidnap and murder Rogelio. The conspiracies to kidnap and murder Rogelio are two predicate acts, constituting the requisite pattern of racketeering activity. Because Franjul's marijuana conspiracies form a second predicate act, we need not address his argument concerning the conspiracies to kidnap and murder Perez. The evidence also is sufficient to establish that Fernandez was associated with Cheo's enterprise.

## IV. DISCLOSURE OF TECHNICAL INFORMATION

■ Fernandez and Franjul filed a motion to disclose the location of the transmitter and the container in which it was hidden, as well as the means of transmission and other related technical information. The district court ordered disclosure. Upon the government's motion to reconsider and after an *in camera* hearing, the court vacated its previous order. The district court ruled that the defendants were entitled to disclosure of some transmitter information, but denied the defendant's request in all other respects. The district court did not indicate the grounds on which it denied the request.

The government had argued that the information sought was subject to a qualified privilege or that it was protected because of national security concerns. Recently, in *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir.1986), this court held that the qualified government privilege not to disclose sensitive investigative techniques applies "to the nature and location of electronic surveillance equipment." The court noted that disclosure of the location of surveillance devices or their precise specifications will, among other things, educate criminals on how to protect themselves. The court stated, however, that "[t]he privilege will give way if the defendant can show need for the information." *Id.* The court did not establish any fixed rules on disclosure of electronic surveillance techniques, stressing that "the necessity determination requires a case by case balancing process." *Id.*

Fernandez and Franjul contend that voice identification was the "critical and crucial" issue at trial. They argue, therefore, that the information they sought was necessary to challenge the validity of voice identification. Failure to disclose the information, the argument continues, resulted in a denial of their Sixth Amendment right to confront the witnesses against them.

We need not determine whether the information sought was privileged because we hold that in any event necessity has not been demonstrated. Contrary to their argument, voice identification was not an issue at the defendants' trial. Indeed, Franjul admitted on direct examination that his voice was on the tape recordings. Record XXIX at 131–32. Both Fernandez and Franjul took the position at trial that their statements meant something different than the interpretation given to them by the government. Moreover, the defendants had access to the original tape recordings, but never presented any evidence that voice comparisons were attempted yet inconclusive because of a lack of technical information. Consequently, the defendants have failed to demonstrate their necessity for the information.

We also need not determine whether such information was properly the subject of national security concerns. Because the information the defendants sought was not relevant to their defense, it cannot be said that they were denied a fair trial. *United States v. Porter*, 701 F.2d 1158, 1162 (6th Cir.) (ultimate question is whether defendants were denied a fair trial), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983).

In sum, the defendants have not demonstrated the need or relevance of the information sought. Therefore, we hold that the district court did not err in denying the

defendants' motion to disclose the surveillance information.

## V. CONCLUSION

In conclusion, we AFFIRM Fernandez' RICO convictions as charged in Counts I and II. We REVERSE, however, Fernandez' conviction for marijuana conspiracies as separately charged in Counts IV and V. We AFFIRM Franjul's RICO conspiracy conviction, and his convictions for the separately charged marijuana conspiracies.