UNITED STATES of America,
Plaintiff–Appellee,

v.

George VAN HEMELRYCK, Golbert Bustamante, Tyrone Giraldo,
Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellant,

v.

George VAN HEMELRYCK, Maria Alvardo, Lilacia Marina Bustamante,
Defendants–Appellees.

Nos. 87–5501, 87–5529.

United States Court of Appeals,
Eleventh Circuit.

Oct. 30, 1991.

James S. Benjamin, Benjamin and Aaronson, Ft. Lauderdale, Fla., Thomas F. Al-

mon, Miami, Fla. (court-appointed), for Bustamante.

Charles G. White, Miami, Fla., for Giraldo.

Theodore J. Sakowitz, Federal Public Defender, Alison M. Igoe, Asst. Federal Public Defender, Miami, Fla., for Hemelryck.

William A. Meadows, Jr., Thomas W. Risavy, Miami, Fla. (court-appointed), for Alvardo.

Leon B. Kellner, U.S. Atty., Susan Tarbe, Linda Collins, Jose A. Bonau, Lynne W. Lamprecht, Asst. U.S. Attys., Miami, Fla., for U.S.

Before FAY and JOHNSON, Circuit Judges, and MERHIGE *, Senior District Judge.

FAY, Circuit Judge:

Defendants were indicted on one count of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 846, and for one count of possession of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1). All defendants were convicted of the conspiracy count, and with the exception of Golbert Bustamante, all were convicted of the possession count. The district court, however, granted the motions of defendants George Van Hemelryck, Lilacia Marina Bustamante, and Maria Alvardo for judgment of acquittal notwithstanding the jury's verdict on the possession count. George Van Hemelryck, Golbert Bustamante, and Tyrone Giraldo challenge their convictions on several grounds including sufficiency of the evidence, introduction of statements by co-conspirators and nontestifying codefendants, and failure to try defendants separately. The United States challenges the judgment of acquittal notwithstanding the verdict. For the reasons that follow, we AFFIRM the convictions of all defendants, and REVERSE the judgment of acquittal notwithstanding the ver-

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virgi-

nia, sitting by designation.

dict as to George Van Hemelryck, Lilacia Marina Bustamante, and Maria Alvardo, and REMAND to the district court for proceedings consistent with this opinion.

## BACKGROUND

On November 19, 1986, two undercover agents of the Drug Enforcement Administration ("DEA"), George Rakowsky and Ruben Prieto, along with a DEA confidential informant, met with defendant George Van Hemelryck in Hialeah, Florida to negotiate a sale of cocaine to Rakowsky. Van Hemelryck indicated that if Rakowsky could show him $100,000 to prove that Rakowsky was a sincere and legitimate businessman, then they could proceed with the proposed sale. On November 21, 1986, Prieto met with Van Hemelryck to allow Van Hemelryck to see and count the money, after which Van Hemelryck again met with Rakowsky and stated that he was satisfied.

Rakowsky continued negotiations for the purchase of cocaine with Van Hemelryck's wife, Lilacia Marina Bustamante ("Marina Bustamante"), and their juvenile son, George Van Hemelryck, Jr. ("George, Jr."), on December 3, 1986. At that time, Rakowsky suggested a deal for sixteen kilograms of cocaine. They arranged for the cocaine to be delivered in three stages: two deliveries of five kilograms each and one six-kilogram delivery. The first five-kilogram delivery was to be made on December 5, 1986, with payment due at the time of delivery. Marina Bustamante acknowledged that Rakowsky had shown her husband $100,000 a few days earlier. Marina Bustamante also assured Rakowsky that despite the fact that she and her husband had previously had some problems with each other, they had worked out their differences and would be acting as partners in the proposed transaction. When Rakowsky expressed concern over who would be present at the proposed delivery, George, Jr. stated that his parents (Van Hemelryck and Marina Bustamante) would be there, and that there would probably be another woman arriving who was a friend of his mother.

On December 5th, Rakowsky and the confidential informant arrived at a house owned by Marina Bustamante's family. Rakowsky went to the front door and was admitted by Van Hemelryck while the confidential informant stayed outside in the car.

In the house, Rakowsky met with Marina Bustamante, Van Hemelryck, and George, Jr. Also at the house was Golbert Bustamante. Marina Bustamante explained that Golbert Bustamante was her nephew, who was there to help with the deal. George, Jr. told Rakowsky that he and his parents usually took Golbert Bustamante with them in their vans when they made cross-country cocaine delivery trips, because he was an excellent mechanic.

Approximately an hour later, defendant Maria Alvardo arrived without any cocaine. Alvardo, who spoke no English, proceeded to make a phone call in Spanish, after which Marina Bustamante told Rakowsky that the cocaine was on its way. Shortly thereafter, Alvardo left the house and met Edgar Moreno and defendant Tyrone Giraldo outside. She returned to the house with a diaper bag from which she extracted four boxes from under some diapers. Alvardo said something in Spanish to Marina, who then informed Rakowsky that there were only four kilograms.

Rakowsky tested the contents of each box with a cocaine test kit. Van Hemelryck claimed that he had a chemistry background and removed some of the cocaine allegedly to test it with a chemistry kit that he had in the house. Van Hemelryck returned and stated that it was ninety-four percent pure cocaine.

Rakowsky said that although he was satisfied with the quality of the cocaine, he was not satisfied with the quantity, since the deal had been for five kilograms, not four. Alvardo and Marina Bustamante began to argue about the mistake. George, Jr. and Golbert Bustamante left to find another kilogram, but returned unsuccessful. Golbert Bustamante then made a call to try to find another kilogram of cocaine. Subsequently, he and George, Jr. left the house again. They were arrested some

distance from the house while they were driving a van owned by Marina Bustamante.

Meanwhile, Alvardo said that she was going to send her people to get more cocaine. She went back outside and met with Moreno and Giraldo. Giraldo subsequently left in another van. At this point, the surveillance agents moved in and arrested Van Hemelryck, Marina Bustamante, and Alvardo inside the house, and Moreno outside the house.

After being advised of her constitutional rights, Marina Bustamante told agents Rakowsky and Prieto that she wanted to cooperate with the government. While Marina Bustamante was talking to the agents, the telephone rang. Marina had a brief conversation with someone in Spanish, after which she advised the agents that "it was the other person, that he is on his way back here." Soon after that phone call, Giraldo returned in another of Marina Bustamante's vans. The DEA arrested Giraldo, and found two separate diaper bags in the back seat of the van, each of which contained three, one-kilogram packages of cocaine. These packages were identical to the first four packages that had been delivered to the house earlier.

All the defendants were indicted for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846 (count one),[1] and for possession with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) (count two). Although the district court had previously denied motions for severance made by several of the defendants, the court reconsidered motions for severance on behalf of all defendants and subsequently granted the motions of Edgar Moreno and Marina Bustamante.

The jury convicted Van Hemelryck, Giraldo, and Alvardo of both counts of the indictment, but convicted Golbert Bustamante of only count one of the indictment. Prior to his trial, Edgar Moreno pled guilty

to count one of the indictment. In her separate trial, the jury found Marina Bustamante guilty of both counts.

Van Hemelryck, Giraldo, Alvardo, Marina Bustamante, and Golbert Bustamante all filed timely motions for judgment of acquittal not withstanding the verdict. The district court denied the motions of Giraldo and Golbert Bustamante, but granted the motions of Van Hemelryck, Marina Bustamante, and Alvardo as to count two of the indictment. This appeal followed.

## DISCUSSION

Van Hemelryck, Golbert Bustamante, and Giraldo appeal their convictions and sentences on four grounds: (1) co-conspirator statements were improperly admitted against Van Hemelryck and Golbert Bustamante; (2) there was insufficient evidence to support the convictions of Van Hemelryck and Golbert Bustamante for conspiracy; (3) it was error to try Golbert Bustamante jointly with his codefendants; and (4) a statement by a nontestifying codefendant was improperly admitted against Giraldo. The government also appeals the judgments of acquittal of Van Hemelryck, Marina Bustamante, and Maria Alvardo on count two of the indictment.

### Co-conspirator Statements

Defendants George Van Hemelryck and Golbert Bustamante argue that the district court improperly admitted coconspirator statements without first making a determination as to the existence of a conspiracy and their individual participation. We disagree.

■ Statements that would otherwise be hearsay are admissible if they are "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). For a declaration by one defendant to be admissible against other defendants under this section, the government must establish by a preponderance of the evidence: (1) that a conspiracy

---

1. The conspiracy charged in the indictment was alleged to have run from November 19, 1986 through December 5, 1986.

existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. *See, e.g., United States v. Byrom*, 910 F.2d 725, 734 (11th Cir.1990); *see also United States v. James*, 590 F.2d 575 (5th Cir.) (en banc),[2] *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), *overruled in part by Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). In determining the admissibility of coconspirator statements, the court may consider both the coconspirator's hearsay statement and independent outside evidence. *Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2781; *United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988). However, this determination need not be made prior to trial. "The district court has discretion to admit the statements subject to proof of these three requirements during the course of the trial." *See, e.g., United States v. Fernandez*, 797 F.2d 943, 945 (11th Cir.1986), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987); *United States v. Norton*, 755 F.2d 1428, 1431 (11th Cir.1985).

■ In this case, the district court deferred ruling on the admissibility of coconspirator statements until after all the evidence had been presented. At that time, the court found that there was "substantial evidence in addition to those statements that would tie the defendants to the conspiracy." (R8:409) The court therefore considered the evidence as to each of the defendants and found that the requirements of Rule 801(d)(2)(E) had been satisfied and that coconspirator statements were admissible. We cannot say that this determination by the district court was clearly erroneous.[3] *See United States v. Alvarez*, 755 F.2d 830, 855 (11th Cir.), *cert.*

*denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985).

■ The record reflects that defendant George Van Hemelryck negotiated a deal with Agent Rakowsky in November 1986. He then demanded to see and counted good faith money presented by the agents. He was also present at the December 5th transaction and assisted in testing the cocaine. His wife, Marina Bustamante, indicated to Rakowsky that she and her husband were partners in this particular transaction. He remained in the house throughout the duration of the proposed deal, awaiting delivery of additional cocaine right up until the time of his arrest. Presence, though not sufficient to prove guilt, is a material and probative fact which may be considered in determining the participation of the defendant in a conspiracy. *United States v. Bain*, 736 F.2d 1480, 1485 (11th Cir.), *cert. denied*, 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984).

Defendant Golbert Bustamante also was present at the house during the December 5th transaction. His aunt, Marina Bustamante, stated that he was there to assist in the transaction. He was present when his cousin announced the imminent arrival of the cocaine. " '[W]hen the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him,' " that person's conspiracy conviction will be upheld. *United States v. Parrado*, 911 F.2d 1567, 1570 (11th Cir.1990) (quoting *United States v. Figueroa*, 720 F.2d 1239, 1246 (11th Cir. 1983)), *cert. denied*, — U.S. —, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991). He also acknowledged his role as mechanic and helper when his aunt and uncle made trips around the country to deliver cocaine and discussed the cocaine business with Agent Rakowsky.[4] Lastly, although he claims

---

**2.** Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**3.** "A finding of fact is clearly erroneous when after reviewing the entire evidence the reviewing court 'is left with a definite and firm conviction that a mistake has been committed.' " *Unit-*

*ed States v. Turner*, 871 F.2d 1574, 1581 (11th Cir.1989) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

**4.** A **[Rakowsky]**.... [M]yself and George, Jr., and Golbert started talking about general cocaine matters, socializing, things like that.

that mere presence was the extent of his involvement in this conspiracy, Golbert Bustamante actively participated in efforts to obtain an additional kilogram of cocaine, by making a phone call, and going out in search of another source of cocaine.[5]

Given this evidence, the district court was not clearly erroneous in finding that the government had shown by a preponderance of the evidence that a conspiracy existed and that the defendants George Van Hemelryck and Golbert Bustamante participated in that conspiracy.[6] Neither Van Hemelryck nor Golbert Bustamante apparently challenges that the statements were made during the course and in furtherance of the conspiracy. We find that the cocon-

spirator statements were properly admitted.

### Sufficiency of the Evidence

◼ Defendants George Van Hemelryck and Golbert Bustamante also challenge the sufficiency of the evidence with respect to their convictions for conspiracy to possess cocaine with intent to distribute. In evaluating their claims of insufficient evidence, we must view the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the jury's verdict. *United States v. Gutierrez*, 931 F.2d 1482, 1488 (11th Cir.1991). The evidence is sufficient to support a convic-

**Q.** Now, to the best of your memory, can you tell—can you tell what, if anything, the defendant, Golbert Bustamante, said at this time?
**A.** Well, initially George Van Hemelryck, Jr., told me how him, his mother, his father, usually take Golbert Bustamante with them in the vans when they make cross-country trips to deliver of cocaine. The reason that they take him is that he is an excellent mechanic. He generally helps out. He has a good head on his shoulders, keeps his mouth shut.
**Q.** Was the defendant, Golbert Bustamante, present when this was discussed?
**A.** Yes, he was a few feet away from George, Jr.
**Q.** What, if anything, did the defendant, Golbert Bustamante, say about his role?
**A.** He acknowledged the fact that that, in fact, is correct. They started joking around about the old days in Peru, namely George and Golbert.
**Q.** And what, if anything, did they say about Peru?
**A.** George Jr. was telling me how they do have 200 kilos in Peru, but they have no means of bringing it into the United States.

(R6:70–71) Although it is unclear from the record whether any of these cocaine delivery trips were part of the conspiracy charged in the indictment, Golbert Bustamante's acknowledgement of his participation in those trips and in the cocaine business in Peru is relevant to his knowledge that a cocaine transaction was taking place at the house on December 5, 1986. He clearly was not shielded from knowledge of the family "business."

5. **Q.** And did there come a time when Golbert Bustamante and George, Jr. returned?
**A [Rakowsky].** Yes.
**Q.** What, if anything, did they say?
**A.** They stated that they could not come up with the extra kilo, the other source was not available. At that point I observed Golbert Bustamante dialing the phone in the kitchen.

**Q.** And what, if anything, did he say after he dialed the phone?
**A.** He spoke in Spanish and then he spoke to Ms. Marina Bustamante.
**Q.** And what did he say?
**A.** She translated to me that he got a hold of—
**MR. ALMON:** Objection, Judge, I have a problem with the word "translated." She told him something, but that doesn't mean that she translated what was said. I object to the term "translated."
**THE COURT:** Overruled. I will go ahead and let him tell us what she said.
**BY MS. TARBE [Asst. U.S. Attorney]:**
**Q.** What did she say?
**A.** She stated that Golbert got hold of another source and that Golbert and her son would try to get another kilo from another source, they would be leaving now.

\* \* \* \* \* \*

**Q.** Now, did George, Jr. and the defendant, Golbert Bustamante, stay in the house?
**A.** They left.

(R6:79–81) We reject any characterization of the statements by Marina Bustamante of what Golbert Bustamante said on the telephone as "translations," and therefore the statements of Golbert himself. These are, however, clearly statements by a coconspirator during the course and in furtherance of the conspiracy, and can properly be considered. *See Bourjaily v. United States*, 483 U.S. 171, 191, 107 S.Ct. 2775, 2787, 97 L.Ed.2d 144 (1987).

6. The Supreme Court in *Bourjaily* did not decide whether a district court can rely *solely* on the coconspirator statements sought to be admitted in making preliminary factual determinations of admissibility, *Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2781, and we need not do so here as there was independent evidence adduced at trial to support the district court's findings.

tion in a criminal case "if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Graziano,* 710 F.2d 691, 697 (11th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984).

■ To support a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that a conspiracy to possess cocaine with intent to distribute existed between two or more persons, that the accused knew of the conspiracy, and that, with this knowledge, he voluntarily became a part of the conspiracy. *United States v. Weaver,* 905 F.2d 1466, 1479 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). It is sufficient if the government demonstrates that the alleged conspirator knew of the essential purpose of the conspiracy. *United States v. Russell,* 703 F.2d 1243, 1250 (11th Cir.1983). Also, a person may be found guilty of conspiracy "even if he play[s] only a minor role in the scheme." *United States v. Valdes–Guerra,* 758 F.2d 1411, 1415 (11th Cir.1985).

■ The evidence presented at trial, as discussed above, was sufficient to prove that each of the defendants had a part in the conspiracy charged and knowingly and voluntarily committed acts that furthered the purpose of that conspiracy. From this evidence, a reasonable jury could find beyond a reasonable doubt that a conspiracy to possess cocaine with intent to distribute

existed and that both George Van Hemelryck and Golbert Bustamante knew of the conspiracy and voluntarily became part of it.

### Severance

Golbert Bustamante further argues that he was severely prejudiced by being tried with the other defendants because this prevented him from presenting testimony by codefendants that allegedly would have exonerated him. In support of his motion for severance, Golbert Bustamante submitted virtually identical unsigned affidavits by his aunt and uncle, defendants Marina Bustamante and George Van Hemelryck, purporting to exonerate Golbert Bustamante from knowledge of or participation in the conspiracy, and stating that they would only testify in a separate and subsequent trial of Golbert Bustamante.[7] He notes that although all motions for severance were initially denied, the district court ultimately revisited the question and severed out two of the codefendants, Edgar Moreno and Marina Bustamante.

■ In the interest of judicial economy coconspirators should generally be tried jointly. *United States v. Leavitt,* 878 F.2d 1329, 1340 (11th Cir.1989), *cert. denied,* 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); *United States v. Benz,* 740 F.2d 903 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). However, Federal Rule of Criminal Procedure 14 allows the court to sever certain defendants or counts in order to eliminate

---

**7.** The affidavits stated as follows:

 *FIRST:* My name is GEORGE VAN HEMELRYCK [LILACIA MARINA BUSTAMANTE], a defendant and witness in the above-captioned case.

 *SECOND:* On or about December 5, 1986, I was arrested with Golbert Bustamante and others and charged with conspiracy and knowingly possessing with intent to distribute a quantity of cocaine.

 *THIRD:* At no time did Golbert Bustamante ever see the contents of any of the packages that were ultimately seized and contained contraband pursuant to this case. I never told Golbert Bustamante of any plans by other [sic] to possess or distribute any cocaine and, to the best of my knowledge and belief, no one told Golbert Bustamante of their plans to participate in the possession with intent to

distribute or the conspiracy to possess with intent to distribute any quantity of cocaine.

 *FOURTH:* Golbert Bustamante was completely without knowledge of any plan to possess with intent to distribute cocaine, or any actual possession with intent to distribute any amounts of cocaine as alleged in the Indictment. Golbert Bustamante was merely present in the vicinity without knowledge of any other events as alleged in the Indictment.

 *FIFTH:* That, at the present time, I do not intend to testify at the trial of this cause and will invoke my Fifth Amendment privilege if called as a witness. However, if Golbert Bustamante is severed from my case for trial I will testify on his behalf at his separate and subsequent trial as set forth herein.

(R1:78)

prejudice caused by joinder.[8] A motion for severance is within the sound discretion of the district court, *Leavitt,* 878 F.2d at 1340, and in order to successfully show that the court abused its discretion, the appellant must prove "that he was unable to receive a fair trial and suffered compelling prejudice." *Id.* In addition, where the basis of the motion for severance is the existence of potentially exculpatory testimony by a codefendant, the movant "must demonstrate: (1) a bona fide need for the codefendant's testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) that the codefendant will actually testify" at a separate trial. *Id.; Byrd v. Wainwright,* 428 F.2d 1017, 1020 (5th Cir.1970). "If a showing is made, the district court must then consider the significance of the testimony, the prejudice caused by the absence of the testimony, the timeliness of the motion and the effect on judicial administration and economy of resources." *Leavitt,* 878 F.2d at 1340.

██ The affidavits proffered by Golbert Bustamante were unsigned, and while not strictly " 'bare conclusory assertion[s]' tracking the language of the indictment," *United States v. Johnson,* 713 F.2d 633, 641 (11th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984), contained few specific exonerative facts and therefore have little probative significance. Moreover, one of the affiants, George Van Hemelryck, testified at their joint trial and Golbert Bustamante's attorney had the opportunity to cross-examine him. The other affiant, Marina Bustamante, was severed from the trial by the district court and tried separately from Golbert Bustamante. Since she had not yet been tried, it is likely that she would have invoked her Fifth Amendment privilege if called to testify on behalf of Golbert Bustamante. However, "there is no absolute right to be tried in a certain order," *United States v. DiBernardo,* 880 F.2d 1216, 1229 (11th Cir.1989), and Golbert Bus-

tamante has failed to demonstrate that he was severely prejudiced by being tried first.

The record shows that the district court judge gave careful consideration to the motions for severance filed by various of the codefendants in this case and struck what he believed was the proper balance between the needs of those defendants and judicial economy. We find no abuse of discretion in the denial of Golbert Bustamante's motion for severance.

### Statements of Nontestifying Co-Defendant

Defendant Tyrone Giraldo challenges the admission of a statement by a nontestifying codefendant as violative of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We find that admission of this statement was harmless error.

In *Bruton,* the United States Supreme Court held that a defendant's Sixth Amendment right of confrontation is violated when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is given a limiting instruction to consider the confession only against the codefendant. *Id.* at 126, 88 S.Ct. at 1622. However, where the statement is "not incriminating on its face, and became so only when linked with evidence introduced later at trial," *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987), and the statement is "redacted to eliminate not only the defendant's name, but any reference to his or her existence," *id.* at 211, 107 S.Ct. at 1709, then a limiting jury instruction will adequately protect the defendant's Confrontation Clause rights. *Id.* Although the Court in *Marsh* "express[ed] no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun," *id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5, this court has held that "the admission

---

8. Fed.R.Crim.P. 14 provides in pertinent part that "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial togeth- er, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

in a joint trial of a codefendant's confession that is redacted to substitute a neutral pronoun or other general word for the name of the complaining defendant does not violate *Bruton* so long as the confession does not compel a direct implication of the complaining defendant." *United States v. Vasquez*, 874 F.2d 1515, 1518 (11th Cir.1989) (footnote omitted), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990).

 In the case at bar, the government submitted, by way of the testimony of Agents Rakowsky and Prieto, a statement by Marina Bustamante made after she was arrested and cooperating with the government. Agent Rakowsky testified that after hanging up the phone, Marina Bustamante stated that "it was the other person, that he is on his way back here." (R6:91) Agent Prieto testified that "she advised me that that was the man, and he was coming over with the stuff now." (R7:137) Soon after that phone call, Tyrone Giraldo drove up in the van with two diaper bags full of cocaine in the back seat.

The record reflects that the government specifically redacted the statement to substitute neutral words for Giraldo's name. *See* (R6:82–83). Citing *Marsh* and *Vasquez*, the government argues that this sufficiently protected Giraldo because the jury was not compelled to conclude that Giraldo was the individual referred to in Marina Bustamante's redacted statement. Instead, the government contends that Giraldo was implicated by his own actions when he arrived at the house in the van with the cocaine.

This is the precise situation which the Court in *Marsh* declined to address; the statement was redacted by use of neutral words so that any references to defendant by name were eliminated, but not all references to his existence. In *Vasquez*, we noted that

> the jury was not compelled to conclude that Vasquez was the individual referred to in [the codefendant's] confession. There was no evidence before the jury suggesting that Vasquez was the only

source from which [the codefendant] obtained his counterfeit money.... In short, there was nothing in the confession itself *or the record as a whole* that would have directly linked Vasquez in the minds of the jury as the "individual" referred to in [the] confession.

874 F.2d at 1518 (emphasis added).

By contrast, the record in this case presents no person other than Giraldo who could have been the man of Marina Bustamante's statement. Indeed, the statement could reasonably be understood only as referring to Giraldo.

Rather than *Vasquez*, we believe this case is more analogous to *United States v. Bennett*, 848 F.2d 1134 (11th Cir.1988), in which the government attempted to redact the challenged statement to omit all references to the other defendants by using the pronoun "they." In finding the admission of this statement was error, this court noted that in light of the other evidence in the record, "the pronoun 'they' could most logically be understood to refer to [the other defendants]," *id.* at 1142, and was therefore "[f]ar from being neutral." *Id.* at 1142 n. 8. Similarly, in *United States v. Petit*, 841 F.2d 1546, 1556 (11th Cir.), *cert. denied*, 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988), we found that a codefendant's

> statement that he called a 'friend' who gave permission for the goods to be stored at his warehouse, when considered with the other evidence, could reasonably be understood only as referring to Petit. Accordingly, although [the] confession did not directly implicate Petit in the conspiracy, it sufficiently inculpated him so as not to fall under the clear exception to *Bruton* provided by the Court's decision in *Richardson*.

(Footnote omitted.)

Moreover, this court in *Bennett* also found significant the lack of a limiting instruction and the prosecutor's references to the statement in opening and closing arguments. *Bennett*, 848 F.2d at 1142; *see also id.* at 1143 (Hoffman, District Judge, concurring specially). Similarly, no limit-

ing jury instruction was given in this case,[9] and more importantly, the government directly linked the statement and Giraldo in its rebuttal closing, thereby eliminating the beneficial effect of the redaction.[10] We therefore find that the manner in which the challenged statement of Marina Bustamante was admitted was erroneous.

■ It is well settled, however, that *Bruton* violations are subject to the harmless error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Petit*, 841 F.2d at 1556; *Bennett*, 848 F.2d at 1142. The evidence established that Giraldo met with George, Jr. and Marina Alvardo on the morning of December 5, 1986, before the scheduled cocaine transaction. Giraldo and Edgar Moreno then later met with Maria Alvardo by the side of the house, immediately before one of them handed Alvardo a diaper bag containing four kilograms of cocaine.[11] Giraldo hung around outside the house during the cocaine transaction, and met with Alvardo outside the house for a second time, immediately before Alvardo stated that she would send her people to get more cocaine. Giraldo then left the house driving Marina Bustamante's red and white van,[12] in which he later returned with two diaper bags containing six kilograms of cocaine. In light of all the evidence, we find that admission of Marina Bustamante's statement, although error, was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 24, 87 S.Ct. at 828 ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

9. The record does not reflect, however, that Giraldo requested any limiting instruction, although counsel did object to introduction of this statement at trial.

10. "[A]ll Tyrone had to do was show up with that red and white van with six more kilograms of cocaine after Maria Alvardo goes outside and talked to him and says 'I am sending my people for more cocaine,' and he shows up with the cocaine *after Marina Bustamante gets off the phone and says that's the man who is coming.*" (Supp.R. 1:15)

11. Agent Rakowsky did not know which one of the two individuals handed Alvardo the diaper

*Judgments of Acquittal*

■ The government challenges the district court's grant of judgments of acquittal on count two for George Van Hemelryck, Maria Alvardo, and Marina Bustamante. Count two charged defendants with possession of in excess of five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Appellees argue that the district court correctly entered judgments of acquittal because since the indictment charged them with possession with intent to distribute *in excess of five kilograms* of cocaine, the government was required to prove the quantity, *in excess of five kilograms* of cocaine, as an essential element of the offense. We disagree.

It is the law of this circuit that quantity is not an element of 21 U.S.C. § 841(a)(1) "because quantity is not included as an element in the definition of the offense under that subsection."[13] *United States v. Cross*, 916 F.2d 622, 623 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991); *see also United States v. Simmons*, 725 F.2d 641, 643–44 (11th Cir.), *cert. denied*, 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984). It is only under 21 U.S.C. § 841(b), the sentencing provision, that quantity becomes relevant. *Cross*, 916 F.2d at 623.

The evidence amply supported the jurys' verdicts that the appellees actually or constructively possessed cocaine with intent to distribute. It is irrelevant in that context whether they possessed at most four kilo-

bag, but he did remember that the three individuals were standing and talking within inches of each other and that the whole event lasted only a few seconds.

12. The van went a short distance and then stopped at a service station. Giraldo exited the van and made a short phone call at a phone booth. He then re-entered the van and left.

13. 21 U.S.C. § 841(a)(1) provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally— (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

grams of cocaine, or in excess of five kilograms of cocaine. We therefore reverse the district court's grant of judgments of acquittal on count two of George Van Hemelryck, Maria Alvardo, and Marina Bustamante, and remand to the district court for further proceedings consistent with this opinion.

### CONCLUSION

For the reasons set forth above, we AFFIRM the convictions of George Van Hemelryck, Lilacia Marina Bustamante, Golbert Bustamante, Maria Alvardo, and Tyrone Giraldo. We REVERSE the grant of judgment of acquittal on Count 2 of the indictment for George Van Hemelryck, Lilacia Marina Bustamante, and Maria Alvardo, and REMAND to the district court for further proceedings consistent with this opinion.