**Jane DOE, Plaintiff,**

v.

**Valerie LEE, etc., et al., Defendants.**

**No. Civ.A. 01–T–940–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 9, 2002.

Kerri P. Parker, Bessemer, AL, Artur G. Davis, Law Office of Artur Davis, Birmingham, AL, for Plaintiff.

M. Roland Nachman, Jr., B. Saxon Main, Steiner-Crum, Byars & Main, PC, Montgomery, AL, Thomas T. Gallion, III, Haskett, Slaughter, Young & Rediker, Montgomery, AL, Fred Frank Bell, Office of Atty. General, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Jane Doe asserts federal and state-law claims against the following three defendants: Valerie Lee, a psychologist employed with the Family Court of Montgomery County, Alabama; the Family Court itself; and Montgomery County. Doe is the adult daughter of a Montgomery lawyer who ran unsuccessfully for judicial office. She alleges that Lee, who was associated with the successful candidate's campaign, disclosed Doe's confidential psychological records in an effort to hurt Doe's mother's campaign. Count I of Doe's complaint alleges that Lee disclosed the records in violation of Doe's right to privacy under the fourteenth amendment to the United States Constitution as enforced through 42 U.S.C.A. § 1983. Count II alleges that the Family Court and Montgomery County have an official policy or custom reflecting deliberate indifference to Doe's right to privacy in violation of § 1983. And counts III and IV are both brought under state law against Lee for violating Doe's right to privacy and for intentionally inflicting emotional distress on her. This court has jurisdiction over the claims in this lawsuit on the basis of 28 U.S.C.A. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental).

The matter is now before the court on the summary-judgment motions of the defendants. For the reasons that follow, the motions will be granted in full.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

The facts of this case, considered in the light most favorable to Doe, are as follows.

Doe is the adult daughter of a Montgomery lawyer who ran for judicial office and was defeated by her opponent, Margaret Givhan. When she was a teenager, Doe received psychological counseling under the auspices of the Family Court. This counseling related to emotional difficulties Doe was experiencing during 1991. During the course of her counseling, Doe was interviewed several times by Lee, then a licensed psychologist employed by the Family Court. Doe communicated extremely sensitive information about her family history and her emotional state to Lee. The records of this counseling were sealed under court order and have been maintained under the custody and control of the Family Court. Doe has never authorized the disclosure or dissemination of the contents of her juvenile counseling records.

In June 2000, Doe's mother was nominated as a candidate for county-wide judicial office. Doe's mother was narrowly defeated in the November 2000 general election. During the campaign, Doe's mother and step-father were told by Roberta Franklin, a local radio personality, that information about Doe's juvenile counseling records was being circulated by Givhan and other individuals associated with Givhan's campaign. Some time after hearing this, Doe's step-father arranged with Franklin that Franklin would telephone Givhan while Doe's step-father was listening, without Givhan's knowledge of Doe's step-father's presence. Following this arrangement, Doe's step-father overheard a telephone conversation between Givhan and Franklin in which Givhan repeated to Franklin the information from Doe's counseling records. In the same conversation, Doe's step-father also heard Givhan tell Franklin that "she had learned about [Doe's] records from both Lee and [Martha] Nachman" and that "either ... Nachman or ... Lee could provide more

details."[1] Givhan gave Franklin a phone number that belonged to either Lee or Nachman.

Doe's step-father had two additional brief conversations about the disclosure of Doe's counseling records. First, on the night of November 1, 2000, Pam Gooden Cook (whose role regarding either campaign is unclear at this point) called Doe's step-father and told him that she had been told by Adelle Sankey, who was associated with Givhan's campaign, that Mark Gilmore, who was also associated with Givhan's campaign, had shown Sankey and others documents from Doe's counseling records. The same night, Doe's step-father called Sankey, and she confirmed that Gilmore had "shown her papers showing that [Doe] had had a juvenile record," and that Gilmore had gotten the papers from people with Givhan's campaign.[2]

Givhan, Lee, and Nachman have all been deposed in this case and have denied the allegations of the complaint. Givhan did state, however, that she had discussed negative rumors about Doe's mother with Nachman during the campaign, but denied "using" the information to further her campaign or in any other way.[3]

Franklin has also been deposed in this case. Franklin's deposition testimony is extremely unclear as to whether she is able to corroborate that the conversation which Doe's step-father has stated he overheard between her and Givhan actually occurred. At one point in the deposition, Franklin stated in response to a question about that conversation,

"I'm trying to think, because there were a couple of calls. One—I don't know if it was after this one—as I continued to tell [Doe's mother] about people working against her. [Doe's mother] was upset and she told me to call [Doe's step-father] at the office. And I know I did that. I called [Doe's step-father] at the office. And there was a call between— that I do know he was on the line. I do know that on one of them. But I can't tell you which one, because a lot was going on."[4]

Later in the deposition, Franklin indicated that she did specifically remember a conversation in which she telephoned Givhan's husband while Doe's step-father was on the line, but could not remember directly speaking with Givhan while Doe's step-father was on the line:

"To the best that I remember, we got [Givhan's husband], and I remember what I asked [him]. And to be honest with you, I cannot remember him on line with me and Judge Givhan, but I do know he was on line with me and [Givhan's husband], because I placed that call asking for Judge Givhan. And I did call to get her on line, but she was not there and I talked to [Givhan's husband]."[5]

This is the most specific reference Franklin has made, in the information provided to the court, to the conversation Doe's step-father has alleged overhearing. There are references in her deposition to other tapes and conversations in which Franklin may have had a different memo-

---

1. Defendant Lee's supplement to motion for summary judgment, filed February 22, 2002 (Doc. no. 65), deposition of Steve Prince, 47:2–6.

2. *Id.,* 49:1–23.

3. *Id.,* deposition of Margaret Givhan, 67:1–23.

4. Defendants' supplement to motion for summary judgment, filed March 22, 2002 (Doc. no. 81), deposition of Roberta Franklin, 30:7–18.

5. *Id.,* 33:6–14.

ry of the facts, but those are not before this court.

Franklin did testify in her deposition in greater detail about a face-to-face meeting between herself, Givhan, and Gilmore, during Givhan's campaign, in which Gilmore and Givhan discussed negative information about Doe's mother with Franklin. In describing this meeting, Franklin stated that Givhan told her negative information about Doe and Doe's mother, and that Givhan "confirmed with" a statement by Gilmore, as follows: "He said, Tell her—He said, 'That's in the court's records,' or something. He said, 'We've got documentation.'" [6] Franklin also stated that in this meeting Givhan told her that she should speak with Lee and Nachman for more information about Doe's mother and Doe, and that Givhan gave Franklin a phone number that was Lee's work number.[7] Franklin further testified that, after this conversation, she attempted to meet with Lee but was unable to contact her.[8]

It appears that none of the other parties or witnesses has any evidence of the alleged conspiracy other than hearsay statements. Doe has presented no non-hearsay, documentary, or eyewitness evidence to substantiate her claims.

## III. DISCUSSION

### A.

The defendants contend that they are entitled to summary judgment because the statements made by Givhan, which are the basis for Doe's claims, are all hearsay and thus would not be admissible at trial; in other words, according to the defendants, Doe has no case because her primary evidence is inadmissible hearsay. In response, Doe claims that Givhan's statements as reported by her step-father will be admissible at trial under Federal Rule of Evidence 801(d)(2)(E), which defines statements by co-conspirators as non-hearsay. Non-hearsay statements may be offered for the truth of the matter asserted.

As this court recently held in *Bozeman v. Orum*, 199 F.Supp.2d 1216, 1222 (M.D.Ala.2002), inadmissible hearsay cannot be considered on a motion for summary judgment. *See also Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.1999). However, if this hearsay can be "reduced to admissible form" at trial, it may be considered. *Macuba*, 193 F.3d at 1323 (citing several cases). In addition, even though a document, deponent, or affiant refers to hearsay information, that information may be considered on summary judgment if it would be admissible at trial under an exception to the hearsay rule or as non-hearsay. *Id.* at 1323–24. Therefore, to resolve the motions for summary judgment, the court must determine whether the statements Doe's step-father alleges he heard qualify as non-hearsay.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that "A statement is not hearsay if ... The statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Therefore, before the proffered statement can be deemed admissible as non-hearsay, Rule 801(d)(2)(E) requires that a plaintiff establish the following elements by a preponderance of the evidence: (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. *United States v. Van Hemelryck*, 945 F.2d 1493, 1497–98 (11th Cir.1991); *see also United*

---

**6.** *Id.*, 48:21–23, 49:1–23, 50:1–23, 51:1–13.

**7.** *Id.*, 61:1–14, 66:15–23, 67:1–19.

**8.** *Id.*, 94:15–23, 95:1.

*States v. Byrom,* 910 F.2d 725, 734 (11th Cir.1990); *United States v. Allison,* 908 F.2d 1531, 1533 (11th Cir.1990). The "existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered," Fed.R.Evid. 801(d)(2), are preliminary questions of fact that, under Federal Rule of Evidence 104(a), the district judge alone must resolve. *Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987); Fed. R.Evid. 104(a).

 Finally, "in determining the admissibility of co-conspirator statements, the court may consider both the co-conspirator's hearsay statement and independent external evidence." *City of Tuscaloosa v. Harcros Chemicals, Inc.,* 158 F.3d 548, 558 (11th Cir.1998) (citing *Bourjaily,* 483 U.S. at 181, 107 S.Ct. at 2781). However, and perhaps most critically here, Rule 801(d)(2) requires that some independent evidence must exist to support the conspiracy's existence other than the statements in question themselves: the rule states that the "*contents* of the statement shall be considered but *are not alone sufficient to establish* ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)." Fed.R.Evid. 801(d)(2) (emphasis added).

While most of the cases that deal with co-conspirator hearsay statements are criminal, Rule 801(d)(2)(E) does not so limit itself and thus applies in civil cases as well. *See* 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 801.34[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997).

 Here, all the evidence Doe has of the alleged conspiracy is hearsay: Both her step-father's testimony and Franklin's testimony of the conspiracy are all hearsay. And while it could be argued that Franklin's testimony corroborates Doe's step-father's testimony, it corroborates only the fact that hearsay statements were made; it does not corroborate the "content" of the hearsay statements, which is what Rule 801(d)(2)(E) requires.[9] Therefore, the evidence Doe has put forward of the alleged conspiracy is insufficient under Rule 801(d)(2)(E), and Doe has not shown any other basis for its admission.

Moreover, even without Rule 801(d)(2)'s hearsay-alone-not-sufficient language, the defendants would still be entitled to summary judgment. In *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Supreme Court held that, for Rule 801 purposes, a court could consider the contents of a coconspirator's statement in determining the existence of the conspiracy and the participation in it of the declarant and the party against whom the statement is offered. The Court, however, reserved deciding whether the contents of the declarant's statement could alone suffice to establish a conspiracy. In 1997, Rule 801(d)(2) was amended to codify the *Bourjaily* Court's holding and to resolve the issue the Court left unresolved by stating that "contents of the statement shall be considered but are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." However, even without the 1997 amendment resolving the hearsay-alone-sufficiency issue, the result of this case would be the same. First, the hearsay

---

**9.** While Franklin corroborates the fact that the hearsay statements, as related by Doe's step-father, were made, Franklin places Givhan's remarks in the context of a different conversation, one among her, Givhan, and Gilmore, not a telephone conversation with Doe's step-father listening.

presented by Doe is too weak as a matter of law to support a trial judge's preliminary finding by a preponderance of the evidence that the alleged conspiracy existed, and, second, the defendants would be entitled to judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure because no reasonable jury could render a verdict in favor of Doe on any of her claims based on the weak hearsay evidence she has presented. *See United States v. Thompson,* 286 F.3d 950, 967 (7th Cir.2002) ("uncorroborated hearsay testimony is not particularly compelling"). All three defendants are entitled to summary judgment.

### B.

Finally, there is another reason to grant summary judgment in favor of the Family Court and Montgomery County. Other than the speculation that Lee must have obtained Doe's records from the Family Court, where they were kept, and the Family Court's status as a division of Montgomery County, there is simply no evidence, hearsay or not, to indicate any actual participation of these defendants in the alleged conspiracy among Givhan, Lee, and Nachman.

An appropriate judgment will therefore be entered in favor of the defendants— Lee, the Family Court, and Montgomery County—and against Doe.

### JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) The motions for summary judgment filed by defendants Valerie Lee, the Family Court of Montgomery County, Alabama, and Montgomery County on October 17, 2001, February 22 and 27, 2002, and March 22, 2002 (Doc. nos. 25, 65, 68 and 81), are granted.

(2) Judgment is entered in favor of defendants Valerie Lee, the Family Court of Montgomery County, Alabama, and Montgomery County and against plaintiff Jane Doe, with plaintiff Doe taking nothing by her complaint.

It is further ORDERED that costs are taxed against plaintiff Doe, for which execution may issue.