[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/31/99
THOMAS  K. KAHN
CLERK

————————————————

No. 96-4991

————————————————

D. C. Docket No. 95-109-CR-NESBITT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GLENN EUGENE TAYLOR, JOHN GARY SCOTT,

Defendants-Appellants.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————
**(August 31, 1999)**

Before COX and HULL, Circuit Judges, and COHILL*, Senior District Judge.

PER CURIAM:

---

\*       Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

Glenn Eugene Taylor and John Gary Scott appeal their convictions and sentences for various drug trafficking offenses. We affirm.

## I. Background

Taylor and Scott were both charged in a three-count indictment with conspiracy to import cocaine into the United States, in violation of 21 U.S.C. § 963; knowingly and intentionally importing cocaine into the United States, in violation of 21 U.S.C. § 952(a); and knowingly and intentionally possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The charges stemmed from a scheme to smuggle cocaine into the United States from Central America inside secret compartments in two sailboats.

The two defendants were tried together. Prior to trial, the Government indicated that it planned to offer into evidence an incriminating, secretly taped conversation between Taylor and an undercover informant. Scott moved to sever the trial or to exclude the statement on the ground that its admission would violate his rights under the Sixth Amendment. The district court denied the motion, but ordered the Government to redact the statement. The statement was redacted to eliminate the word "we" in two places and the word "it" once. It was then read into the record over Scott's objections. In relevant part, the statement read as follows:

> Informant: Yeah, were you at Barranquilla?
> Taylor: No, Boca Grande. Oh, no, the harbor right there, ah, at Venezuela and Columbia, where you go in behind those islands. . .

2

| | |
|---|---|
| Informant: | Right there at Maracaibo. |
| Taylor: | Yeah, they brought it over on a boat. |
| Informant: | Uh-huh. |
| Taylor: | Met my boat and loaded it. |
| Informant: | Yeah. |
| Taylor: | But it was cocaine. It wasn't pot. |

. . .

| | |
|---|---|
| Taylor: | But anyway, it had hydraulic walls. The walls came down, stacked all in there went back up. . . . |
| Informant: | Beautiful. |
| Taylor: | Had a galley table. . . . [Y]ou take the galley table apart and then they had a, like a remote control. You push the thing . . . . |

. . .

| | |
|---|---|
| Taylor: | Coming over, I didn't have to take it over, luckily, I flew over. |
| Informant: | Yeah. |
| Taylor: | Because the boat was already there. |
| Informant: | Yeah. |
| Taylor: | The captain or somebody chickened out. |
| Informant: | Yeah. |
| Taylor: | And they got – and they came got me. |

(R.9 at 496-498.) Before the statement was introduced, the court instructed the jury that it was only to consider the statement as it related to Taylor's role in the charged offenses. (*Id.* at 493.)

In addition to this statement, the Government offered the testimony of two co-conspirators and of several government agents to show that the defendants had engaged in a conspiracy to smuggle cocaine from 1986 until 1993. One of the witnesses was Carlos Orozco. He testified that he was a ship captain who had been

recruited into the drug-smuggling conspiracy in 1989. (R.8 at 277-78.) He then recounted several instances when he had either sailed a boat containing drugs or had helped load or unload drugs from a boat. (R.8 at 280-296.) Besides identifying Scott and Taylor as members of the conspiracy, he testified about one specific incident where Scott had helped load cocaine into hidden compartments on one of the boats. (R.8 at 286-287.) The jury convicted both defendants on all counts and this appeal followed.

## II. **Issues Presented and Standard of Review**

The defendants raise numerous issues on this appeal but only one warrants discussion.[1] Scott contends that his Sixth Amendment Confrontation Clause rights were violated when the district court denied his motion for a severance and admitted into evidence his non-testifying co-defendant's statement. We review the district

---

[1] Defendant Taylor also argues that: (1) he was denied a fair trial when the district court excluded a document that he contends contains an exculpatory Government admission; (2) the district court erred in admitting evidence of his prior convictions and admissions because the evidence was more prejudicial than probative; (3) the district court erred in enhancing his sentence to life imprisonment because one of his prior sentences was obtained from an information and not an indictment; and (4) the cumulative impact of all the district court's errors deprived him of a fair trial. Defendant Scott also argues that: (1) the prosecutor made improper arguments in his rebuttal closing argument; and (2) he was denied effective assistance of counsel when the district court refused to provide his new co-counsel with a continuance to prepare for sentencing. These contentions are without merit and do not warrant discussion. *See* 11th Cir. R. 36-1.

4

court's denial of a motion for a severance for an abuse of discretion. *See United States v. Tapia*, 59 F.3d 1137, 1141 (11th Cir. 1995).

### III. Discussion

Scott argues that the district court erred in not granting his motion for a severance because Taylor's statement, even its redacted form, inculpated him in violation of the rule laid down in *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968). He contends that the failure of the Government to redact the references to "they" and the "captain" in the statement, combined with the other evidence in the record, compelled the jury to conclude that he was one of the other people involved in the crime. The Government responds that the district court did not err because the statement did not directly or indirectly incriminate Scott. For the reasons that follow, we agree with the Government. We conclude there was no *Bruton* violation, and, thus the district court did not abuse its discretion in denying Scott's motion for a severance.

The Confrontation Clause of the Sixth Amendment provides a defendant in a criminal trial the right "to be confronted with the witnesses against him" and cross-examine them. *See Richardson v. Marsh*, 481 U.S. 200, 208, 107 S. Ct. 1702, 1707 (1987). This right is violated when a facially incriminating statement of a non-testifying co-defendant is offered into evidence at a joint trial even if the jury is instructed to consider the statement only as evidence against the defendant who made

the statement. *See Bruton*, 391 U.S. at 124, 88 S. Ct. at 1622. The right is also violated when a facially incriminating statement is redacted to replace the defendant's name with "an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol. . ." *See Gray v. Maryland*, 523 U.S. 185, ___, 118 S. Ct. 1151, 1155 (1998). Although we normally assume that jurors will follow limiting instructions, these two situations provide instances where we do not assume they will do so given the powerfully incriminating nature of the statements. *See id.* at —, 118 S. Ct. at 1155-1156; *Bruton*, 391 U.S. at 124, 88 S. Ct. at 1622.

In *Richardson*, however, the Supreme Court suggested that a non-testifying co-defendant's statement may be admitted without violating the Confrontation Clause if it does not directly incriminate the defendant and the jury is required to draw inferences to connect the statement to the defendant. *See Richardson*, 481 U.S. at 208-209, 107 S.Ct. at 1707-08; *United States v. Brazel*, 102 F.3d 1120, 1140 (11th Cir.), *cert. denied*, — U.S. —, 118 S. Ct. 79 (1997). The reasoning behind this conclusion is that in such a situation, the jury's need to link separate pieces of evidence together makes it a "less valid generalization that the jury will not likely obey the instruction to disregard" some of the evidence. *Richardson*, 481 U.S. at 208, 107 S. Ct. at 1708. Applying this logic to the facts before it, the Court held in *Richardson* that a statement that is redacted to eliminate a defendant's name and "any

6

reference to his or her existence" and that is admitted with a limiting instruction does not violate the Confrontation Clause. *Id.* at 211, 107 S. Ct. at 1709.

Although the Supreme Court did not express any opinion in *Richardson* about the admission of a statement that includes neutral pronouns, *see id.* at 211 n.5, 107 S. Ct. at 1709 n.5, the Eleventh Circuit has dealt with the issue. Under our precedent, the admission of a co-defendant's statement that contains neutral pronouns does not violate the Confrontation Clause so long as the statement does not compel a direct implication of the defendant's guilt. *See United States v. Vasquez*, 874 F.2d 1515, 1518 (11th Cir. 1989) (per curiam); *see also United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir. 1984) (a statement "must be clearly inculpatory standing alone" in order to fall within the coverage of *Bruton*).

Applying this law to the facts of this case, we conclude that Taylor's statement did not compel the jury to conclude that Scott was part of the drug-smuggling conspiracy. Although the statement did refer to other participants in the crime, it provided the jury with no indication as to their identity and it did not directly incriminate Scott. We have consistently held that such statements do not violate the Confrontation Clause. *See, e.g., United States v. Garrett*, 727 F.2d 1003 (11th Cir. 1984), *aff'd*, 471 U.S. 773, 105 S. Ct. 2407 (1985); *Vasquez*, 874 F.2d 1515. In *Garrett*, for example, a government witness recounted a statement made by a co-defendant in which the co-defendant referred to his "underlings" and "charges" who

7

helped him carry out his drug-smuggling scheme. *Id.* at 1013. The other defendant in the action argued that the statement violated *Bruton* because it directly implicated him. We disagreed, concluding that due to the extensive nature of the drug smuggling scheme involved in the case, the references to other people in the co-defendant's statement only confirmed the obvious fact that others were involved in the conspiracy. *Id.* The court concluded that the statement did not in any way implicate the defendant or suggest the identity of any members of the conspiracy. *Id.* at 1014-1015; *see also Vasquez*, 874 F.2d at 1516 (reference to "individual" who supplied counterfeit money in co-defendant's statement did not directly incriminate the defendant in light of fact that nothing compelled the jury to conclude that the defendant was the "individual" to which the co-defendant referred); *Satterfield*, 743 F.2d at 849 (co-defendant's reference to "people" in statement did not violate Confrontation Clause since it did not specifically name the other defendants or describe them in such a manner that the jury would connect them to the statement); *cf. States v. Hicks*, 524 F.2d 1001, 1003 (5th Cir. 1975) (reference in statement of co-defendant to number of people involved in a bank robbery did not violate *Bruton*, as the key fact to be proved was not how many robbers there were but the identity of the robbers).

Scott argues that the facts of this case are identical to those presented in cases like *United States v. Bennett*, 848 F.2d 1134 (11th Cir. 1988), *United States v. Petit*, 841 F.2d 1546, 1556 (11th Cir. 1988), and *United States v. Van Hemelryck*, 945 F.2d

1493 (11th Cir. 1991). He contends that, just as in those cases, the statement in this case contains neutral pronouns that clearly refer to him when considered in light of the other evidence in the record. He points specially to the fact that Orozco, a Government witness, testified that Scott and some others had helped him load the boat with cocaine. Scott argues that in light of Orozco's testimony, Taylor's statement that "they" loaded the boat with cocaine and Taylor's other references all directly incriminated him.

In all three of the cases relied upon by Scott, the statements of co-defendants that included neutral pronouns were found to violate the Confrontation Clause because the statements could only be understood to refer to the defendants. In *Bennett*, for example, three defendants were jointly tried in a drug conspiracy case involving a boat and one of the non-testifying defendants made a statement referring to "[t]he vessel where *they* unloaded the cocaine from" and "[t]he boat *they* were on." *Bennett*, 848 F.2d at 1141-42 (emphasis in original). The Eleventh Circuit held that the admission of the statement was error because the references to "they" clearly referred to the two other defendants. *Id.* at 1142. In reaching this conclusion, the court noted that the prosecutor had expressly made this connection in his opening statement and in his closing argument. *Id.* The court also noted that the district court had failed to give a limiting instruction to the jury at the time the confession was admitted. *Id.* at 1142 n.8.

In *Petit,* five defendants were jointly tried for conspiring to receive and possess stolen goods. *Petit,* 841 F.2d at 1549. One of the co-defendants made a statement that the unloaders (two of the defendants) did not know that the goods were stolen, and that he had called a "friend" to store the goods at the friend's warehouse. *Id.* at 1555. The jury acquitted the two unloading defendants, but convicted Petit, the "friend" who had supplied the warehouse. *Id.* The Eleventh Circuit acknowledged that the confession was not directly incriminating, but concluded that given the evidence in the record, the jury could only have understood Petit to be the "friend" identified in the statement. *Id.*; *see also Van Hemelryck,* 945 F.2d at 1502 (Confrontation Clause violation where record presented no other possible person other than the defendant who could have been "the other person" and "the man" referred to in a co-defendant's statement).

Although Scott contends that the circumstances in this case are similar to those presented in *Bennett*, *Petit*, and *Van Hemelryck*, we find those circumstances to be distinguishable. First, in the present case, the evidence presented by the Government demonstrated the existence of a large conspiracy with many members. The Government argued to the jury in its closing arguments that Taylor and Scott were just two members of this large cast of actors. (R.11 at 663.) Given this background, the references in Taylor's statement to unknown people loading the boat and meeting Taylor do not implicate Scott any more so than anyone else. Indeed, the statement

10

does nothing more than corroborate other evidence that showed that other people were involved in the drug importation scheme besides Taylor. Furthermore, the Government did not directly link the neutral pronouns to Scott at any point in its closing argument. In fact, the Government even argued that Taylor's statement regarding the boat being met and loaded by some people in an area between Venezuela and Columbia was not true because the evidence showed that Taylor was not actually present during the loading. (*Id.* at 672.) Finally, the district court gave the jury an appropriate limiting instruction at the time the statement was read into evidence. (*See* R.9 at 493.)

## III. Conclusion

For the foregoing reasons, we affirm the convictions and sentences of Taylor and Scott.

AFFIRMED.