[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13729
Non-Argument Calendar

_____

D. C. Docket No. 05-00403-CR-T-23TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MELLISSA THOMAS,
REGINALD ST. CLAIR BROWN,
SHERONDA THOMAS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(July 10, 2007)**

Before DUBINA, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Appellants Mellissa Thomas ("Mellissa"), Sheronda Thomas ("Sheronda"), and Reginald Brown ("Brown"), who are serving 27-month, 21-month, and 57-month sentences, respectively, for conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371, and five counts of bank fraud, in violation of 18 U.S.C. §§ 2, 1344, challenge their convictions and sentences. The defendants were convicted along with codefendant Michelle Barker. Mellissa argues on appeal that: (1) she should not be required to pay joint and several restitution for the $75,764.48 lost as a result of the conspiracy in which she participated; (2) the district court erred by enhancing her sentence for being a leader or organizer in the conspiracy, pursuant to U.S.S.G. § 3B1.1(c); (3) the evidence was insufficient to convict her; and (4) she was prejudiced by an alleged violation of *Bruton v. United States*, 391 U.S. 123, 126, 88 S. Ct. 1620, 1622-23 (1968). Sheronda contends on appeal that the evidence was insufficient to convict her. Brown argues on appeal that: (1) the district court erred in denying him a two-level reduction for acceptance of responsibility; and (2) his sentences were unreasonable because they were greater than the sentences received by his codefendants. We will address each of these arguments in turn.

I.

Mellissa argues that the trial court erred in ordering her to pay joint and

2

several restitution in the amount of $75,764.48, which was the actual loss caused by the conspiracy. Mellissa contends that the record is void of any evidence to prove that she received funds from any of the transactions except the one in which she participated with Barker. Accordingly, she argues, her role in the conspiracy should limit her only to the transactions that occurred with Barker.

We review a district court's restitution order for abuse of discretion. *United States v. Odom*, 252 F.3d 1289, 1299 (11th Cir. 2001). However, if a defendant fails to challenge a restitution order at sentencing, we review for plain error only. *Id.* In the instant case, Mellissa asked for probation in order to pay restitution more quickly, but she did not challenge the restitution order, even when given an opportunity to do so. Under the plain error standard of review, Mellissa "must show that: (1) an error occurred; (2) the error was plain; (3) it affected [her] substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *United States v. Gresham*, 325 F.3d 1262, 1265 (11th Cir. 2003).

A person convicted of any crime against property, including any offense committed by fraud or deceit, is required to make full restitution to the identifiable victim of his offense who has suffered physical or pecuniary loss. 18 U.S.C. § 3663A(c)(1)(A)(ii), (c)(1)(B). "A restitution order may order payment of losses consistent with the common law of conspiracy. Namely, a defendant convicted of

3

participation in a conspiracy is liable not only for [his] own acts, but also those reasonably foreseeable acts of others committed in furtherance of the conspiracy." *Odom*, 252 F.3d at 1299. "[A] district court does not exceed its authority by ordering a defendant to pay restitution for losses which result from acts done in furtherance of the conspiracy of which the defendant is convicted." *United States v. Obasohan*, 73 F.3d 309, 311 (11th Cir. 1996).

In this case, we conclude from the record that the district court did not err in ordering restitution in the amount of $75,764.48 because, while much of the loss incurred was not a result of a transaction Mellissa directly made with Barker, the entire loss was incurred in furtherance of the conspiracy. Because the loss was reasonably foreseeable as the result of acts done in furtherance of the conspiracy, the district court did not err in ordering restitution. As there was no error, there also was no plain error. *See Gresham*, 325 F.3d at 1265.

## II.

Mellissa argues that the district court clearly erred in finding that she was an organizer or leader in the conspiracy. According to Mellissa, the evidence did not show that she managed or supervised any of her co-conspirators.

We review a district court's decision to enhance a defendant's offense level due to his aggravating role under U.S.S.G. § 3B1.1 for clear error only. *See United*

4

*States v. Phillips*, 287 F.3d 1053, 1055 (11th Cir. 2002). The Guidelines provide

for a two-level increase, in pertinent part, "[i]f the defendant was an organizer,

leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c)

(2002). "[T]he assertion of control or influence over only one individual is enough

to support a § 3B1.1(c) enhancement." *Phillips*, 287 F.3d at 1058 (quoting *United*

*States v. Jiminez*, 224 F.3d 1243, 1251 (11th Cir. 2000)).

> In distinguishing a leadership role, the district court should consider
> 'the exercise of decision making authority, the nature of participation
> in the commission of the offense, the recruitment of accomplices, the
> claimed right to a larger share of the fruits of the crime, the degree of
> participation in planning or organizing the offense, the nature and
> scope of the illegal activity, and the degree of control and authority
> exercised over others.'

*Id.* (quoting U.S.S.G. § 3B1.1, comment. (n.4)).

In the present case, we conclude from the record that the district court did

not clearly err in finding that Mellissa was a manager or leader under U.S.S.G. §

3B1.1. The evidence shows that Mellissa recruited Barker and Brown. *See United*

*States v. Perry*, 340 F.3d 1216, 1217-18 (11th Cir. 2003) (upholding the

enhancement where, among other things, the defendant actively recruited two

individuals to transport drugs and directly paid at least one of those individuals for

transporting cocaine). The evidence further shows that Mellissa received a share in

all proceeds garnered as a result of the conspiracy. Mellissa also was the

5

individual who provided Barker and Brown with all account information. Accordingly, Mellissa influenced both Barker and Brown by recruiting them and exercised control by distributing the account information provided by Sheronda. The fact that Sheronda may have played a greater role than Mellissa does not diminish the role played by Mellissa. In light of the above facts, all of which support an enhancement for being an organizer or leader, we conclude that the district court did not clearly err in applying U.S.S.G. § 3B1.1 to enhance Mellissa's sentence.

### III.

Mellissa argues that the evidence was not sufficient to convict her of any of the counts for which she was indicted. Mellissa asserts that the only evidence provided at trial, other than Barker's testimony, was that she was Sheronda's sister, was friends with Brown and Barker, and was present with Barker for two bank transactions. Mellissa adds that, absent Barker's testimony, there was no evidence that she knew she was participating in an unlawful act or conspiracy. Finally, Mellissa asserts that no reasonable jury could credit cooperating co-defendant Barker's testimony.

Sheronda also argues that the evidence was not sufficient to convict her. First, Sheronda asserts that there was insufficient evidence to support a finding that

6

she was part of the conspiracy because there was no proof that she intended the victims' account information to be used by anyone else, that she was rewarded for the use of the information, or that she facilitated the transactions. Sheronda contends that Barker's testimony at trial was incredible because Barker was a criminal who had already admitted to lying to law enforcement officers and who was testifying in order to receive a sentence reduction. Accordingly, Sheronda asserts, the jury could not have found that she knowingly and willfully entered the conspiracy. Sheronda next argues that there was insufficient evidence to show that she was guilty of the second count against her because only Barker's incredible testimony supported a finding that Sheronda provided the information she used to fraudulently transfer money. Additionally, Sheronda contends that there was insufficient evidence to show that she was guilty of the remaining counts against her because there was no evidence that Sheronda in any way participated in Brown's bank transactions with various individuals.

We review

> [q]uestions about the sufficiency of the evidence produced at trial . . . *de novo*. We must view all evidence in the light most favorable to the United States, with all reasonable inferences [including credibility choices] drawn in its favor. To uphold the district court's denial of the motion for judgment of acquittal and the jury's verdict, we need only find that a reasonable fact finder could have concluded that the evidence established the defendant's guilt beyond a reasonable doubt.

*United States v. Fallen*, 256 F.3d 1082, 1087 (11th Cir. 2001) (citations omitted).

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among the constructions of the evidence.

*United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997). "Credibility determinations are the exclusive province of the jury." *Id.* at 1325 (quotation omitted).

> For testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face. It must be testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature. Further, the fact that [the witness] has consistently lied in the past, engaged in various criminal activities, [and] thought that his testimony would benefit him does not make his testimony incredible.

*Id.* (citations and quotations omitted) (alteration in original).

Section 1344 of Title 18 provides "Whoever knowingly executes, or attempts to execute, a scheme or artifice . . . (2) to obtain any of the moneys, . . . under the custody or control of, a financial institution, by means of false or fraudulent pretenses, . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." Any individual who "aids, abets, counsels, commands, induces or procures" the commission of a criminal offense is punishable as a principal. 18 U.S.C. § 2(a). Moreover, where a defendant is a

8

member of a conspiracy, she can be held liable for the "substantive offenses committed by [her] co-conspirators that were within the scope of the conspiracy and in furtherance of its objectives." *United States v. Gold*, 743 F.2d 800, 826 (11th Cir. 1984) (citation omitted).

As an initial matter, we conclude that Barker's testimony was not unbelievable on its face. *See Calderon*, 127 F.3d at 1325. Barker testified only to information that she witnessed. The events Barker described, which amounted to her agreeing to use her bank account for a fraudulent transfer, Mellissa making the call to do the transfer, the two of them picking up the money, and Mellissa telling Barker that Sheronda had provided the account information and needed to be paid, could have occurred under the laws of nature. Sheronda's argument that Barker's testimony is incredible as a matter of law because the testimony would benefit Barker and Barker was a criminal who had lied in the past is without merit. *Id.* That determination is left strictly within the province of the jury. *Id.*

In the instant case, the record demonstrates that the evidence was sufficient to support Mellissa's convictions. The testimony at trial showed that Mellissa obtained account information for at least one victim of the conspiracy, made two phone calls to order wire transfers of money, and received fifty percent of the proceeds from those phone calls. The testimony at trial also showed that Mellissa

9

knew Brown, Brown had solicited the use of various individuals' accounts for additional wire transfers, Brown had split that money with somebody, and Sheronda provided information about the victims' accounts. Making all reasonable inferences in favor of the government, *Fallen*, 256 F.3d at 1087, it would have been reasonable for a jury to conclude that, because Mellissa was part of the conspiracy, was Sheronda's sister, and knew Brown, Melissa knew Brown was also part of the conspiracy. In that event, Brown's actions, done in furtherance of the conspiracy, were reasonably foreseeable. As such, the district court properly held Mellissa responsible for them. *Gold*, 743 F.2d at 824. Accordingly, the district court did not err in denying Mellissa's motion for a judgment of acquittal.

We also conclude from the record that the evidence was sufficient to support Sheronda's convictions. The evidence submitted at trial showed the one commonality between all of the victim account holders was that Sheronda had accessed their accounts in the days or weeks before an illegal transfer was made. Moreover, Sheronda had looked at the information which was necessary to effect a transfer from the victims' accounts. There was no reason, according to her job description, for her to view this information. The evidence at trial also demonstrated that Mellissa showed Barker account printouts that displayed exactly the information Sheronda obtained. Barker additionally testified that Mellissa

10

received the information from Sheronda and split her share of the money with Sheronda.

The above evidence was sufficient to find that Sheronda had entered into a conspiracy to defraud the bank, in violation of 18 U.S.C. § 371. Thus, the evidence was sufficient to convict Sheronda of the first count in the indictment against her. Moreover, the evidence was sufficient to find that, because of Sheronda's actions in giving information to Mellissa, Mellissa and Barker illegally transferred money. Sheronda's assistance in procuring the account information renders her punishable as a principal. 18 U.S.C. § 2. Accordingly, we conclude that the evidence was sufficient to convict Sheronda of the second count in the indictment against her.

The evidence also was sufficient to find that Brown was a part of the conspiracy. The evidence showed that Brown recruited people, including Tamika Barber and Ashli Patterson, to let him use their accounts. Then, money would be transferred into those accounts from the victims' accounts. Brown took the money and split it with somebody else. The only person who accessed all of the victims' accounts was Sheronda. Drawing all reasonable inferences in the government's favor, *Fallen*, 256 F.3d at 1087, we conclude that the above evidence was sufficient to support the conclusion that Sheronda was supplying Brown, either on

11

her own or through Mellissa, with the account information which he used to make the fraudulent transfers. Because Brown was part of the conspiracy, Sheronda was accountable as a principal for these transfers. 18 U.S.C. § 2. Accordingly, the evidence was sufficient to convict Sheronda of counts three through six, and the district court did not err by denying Sheronda's motion for judgment of acquittal.

IV.

Mellissa argues that she was the victim of a *Bruton* violation which prejudiced her. According to Mellissa, the *Bruton* violation occurred when, during cross-examination by one of her codefendants, the attorney asked FBI agent Johnny Lavender whether Brown had confessed that he gave Mellissa a share of the money withdrawn from victim accounts. Mellissa concedes that she did not simultaneously object to the question because the agent did not respond, but the government immediately called a sidebar and alerted the court to the *Bruton* violation. Mellissa asserts that she did not move for a mistrial at that time because Brown indicated he would testify. Mellissa adds that she moved for a mistrial at the first possible moment, when Brown chose not to testify. Mellissa contends this mention was prejudicial because her full name was used, and there was overwhelming evidence of guilt as to her codefendants but not to her. Mellissa adds that this testimony also linked her to Brown and his recruits. Mellissa

contends that there was plain error in the district court's failure to issue a limiting instruction on the *Bruton* violation because the district court was aware of the error and the error affected her substantial rights.

Because there was no contemporaneous objection, we review the alleged *Bruton* violation for plain error only. *United States v. King*, 505 F.2d 602, 605 (5th Cir. 1974). To establish plain error, an appellant must show (1) error, (2) that is plain, and (3) that affects substantial rights. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993). Nevertheless, even if all three conditions are met, we may only recognize the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotations omitted) (alteration in original). In this regard, "the defendant bears the burden of persuasion with respect to prejudice or the effect on substantial rights." *United States v. Monroe*, 353 F.3d 1346, 1352 (11th Cir. 2003).

The Confrontation Clause of the Sixth Amendment provides a defendant in a criminal trial the right "to be confronted with the witnesses against him" and to cross-examine them. U.S. Const. amend. VI; *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 1706-07 (1987). In *Bruton*, the Supreme Court held that, in a joint trial, the Confrontation Clause was violated by the admission of a codefendant's confession that inculpated the defendant, despite a curative

13

instruction given to the jury. *Bruton*, 391 U.S. at 126, 88 S. Ct. at 1622. The Confrontation Clause also is violated when a facially incriminating statement is redacted to replace the defendant's name with "an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol." *Gray v. Maryland*, 523 U.S. 185, 192, 118 S. Ct. 1151, 1155 (1998). No *Bruton* problem exists, however, when the statement is "not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707. The Supreme Court has held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. at 1709. We have stated that "the admission of a codefendant's statement that contains neutral pronouns does not violate the Confrontation Clause so long as the statement does not compel a direct implication of the defendant's guilt." *United States v. Taylor*, 186 F.3d 1332, 1336 (11th Cir. 1999).

In this case, we conclude from the record that there was no *Bruton* violation because there was no testimony admitted regarding whether Brown gave money to Mellissa. Rather, the attorney asked the question, the government called a sidebar conference, and the attorney withdrew the question. The witness never answered

14

the question.  Attorney questions are not evidence.  *United States v. Works*, 526

F.2d 940, 945 n. 19 (5th Cir. 1976).[1]  Moreover, the district court twice instructed

the jury that the attorneys' statements were not evidence and should not be

considered as such.  Given that no testimony was admitted to show a *Bruton*

violation, Mellissa cannot show an error, let alone plain error.  Moreover, given

that the district court instructed the jury not to consider attorneys' statements,

Mellissa cannot show that she was prejudiced, especially as there was independent

evidence sufficient to convict her of the conspiracy.

V.

Brown argues that he should have received a reduction for acceptance of

responsibility.  Brown asserts that, even where a defendant goes to trial and

challenges the validity of the government's case as to his factual guilt, he is not

necessarily prohibited from receiving a reduction based on acceptance of

responsibility.  Brown adds that he accepted responsibility by confessing to

Lavender, and never attempted to withdraw that confession or to change the role of

the co-conspirator he identified in the confession.  Brown additionally asserts that

the district court refrained from deciding the question as to whether one could

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

receive acceptance of responsibility after both acknowledging guilt outside the courtroom and forcing the government to prove guilt, and that the district court was required to answer the question.

"We review a district court's factual findings concerning a reduction for acceptance of responsibility for clear error." *United States v. Williams*, 408 F.3d 745, 756 (11th Cir. 2005). The defendant bears the burden of showing entitlement to the reduction, and, under the clear error standard, the sentencing judge is entitled to great deference on review. *Id.* at 756-57.

A defendant is entitled to a two-level reduction if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). This adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial . . . is convicted, and only then admits guilt." *United States v. Matthews*, 168 F.3d 1234, 1250 (11th Cir. 1999) (quoting U.S.S.G. § 3E1.1, comment. (n.2)). In "rare situations," however, a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. *Id.* (citing U.S.S.G. § 3E1.1, comment. (n.2)). This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to his factual guilt. *Id.* (citing U.S.S.G. § 3E1.1, comment. (n.2)).

16

As an initial matter, while the district court declined to consider whether an individual may both admit guilt outside of court and profess innocence during court proceedings and still receive a reduction for acceptance of responsibility, it found that Brown did not merit a reduction for acceptance of responsibility because he did not accept responsibility. The record supports this finding. Not only did Brown choose to go to trial, where he professed his innocence, but he only accepted responsibility the night before his sentencing hearing. Moreover, Brown was given the opportunity to sign a plea agreement for a lesser offense based on his cooperation with Lavender, but he never signed the agreement. He delayed for so long that the government brought the instant case against him in a superceding indictment. Finally, while out on probation for the instant case, Brown was caught engaging in other illegal acts, to whit, dealing heroin. Considering all of the circumstances in light of U.S.S.G. § 3E1.1, Application Note 1, the district court did not clearly err in finding that Brown had not accepted responsibility. Rather, the facts show that Brown frivolously challenged relevant conduct that was determined to be true by protesting his innocence at trial, continued his criminal conduct by dealing heroin, and only conceded his responsibility when that seemed to be the single option for decreasing his sentence.

Even if the only issue was whether Brown's choice to go to trial precluded

17

him from receiving a two-level reduction for acceptance of responsibility, he would not merit such a reduction. The sentencing guidelines explicitly state that a defendant who goes to trial may only receive a reduction for acceptance of responsibility in rare instances, such as when a defendant chooses not to challenge his factual guilt. U.S.S.G. § 3E1.1, comment. (n.2). By challenging his factual guilt, Brown falls outside the class of "rare" cases outlined by the application note. Accordingly, we conclude that Brown does not merit a reduction for acceptance of responsibility based on this theory either.

VI.

Brown argues that his sentence was unreasonable. Specifically, Brown asserts, Sheronda and Mellissa were the masterminds of the scheme, and they each received approximately two years imprisonment, compared to his 57 months. Brown contends that this is an unwarranted disparity.

After *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), a district court, in determining a reasonable sentence, must correctly calculate the sentencing range under the guidelines and then consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). The factors in § 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness

18

of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*Id.* (citing 18 U.S.C. § 3553(a)). "[N]othing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005). Instead, indications in the record that the district court considered facts and circumstances falling within § 3553(a)'s factors will suffice. *Id.* at 1329-30; *Talley*, 431 F.3d at 786.

We review a defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors. *See United States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005). This "[r]eview for reasonableness is deferential. . . . and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." *Talley*, 431 F.3d at 788. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." *Id.* Notably, "sentencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence." *United States v. Hamaker*, 455

F.3d 1316, 1336 (11th Cir. 2006).

Here, Brown has failed to provide support for his argument that his sentence was unreasonable because it created a sentencing disparity among similarly situated defendants. Brown failed to provide any examples in which defendants with similar circumstances received lesser sentences. Rather, Brown argues that his codefendants received lesser sentences. However, Brown's codefendants were not similarly situated because their criminal history scores were I and II. Brown's criminal history score was VI. Accordingly, Brown's sentences are not comparable to those of his codefendants.

Brown also failed to meet his burden of establishing, in light of the record and the § 3553(a) factors, why his sentence was unreasonable. *See Talley*, 431 F.3d at 788. The record shows that the district court considered the § 3553(a) factors. The district court also sentenced him within the advisory Guideline range, which was less than one-fourth of the 30-year statutory maximum. *See* 18 U.S.C. § 1344, *Talley*, 431 F.3d at 788; *see also United States v. Valnor*, 451 F.3d 744, 751-52 (11th Cir. 2006) (holding that a sentence that was less than one-fourth of the statutory maximum was appreciably below the statutory maximum and therefore reasonable). In the absence of any proof that the sentences were unreasonable, we conclude that they are reasonable. Accordingly, after consideration of the record

and the briefs of all parties, we affirm the defendants' convictions and sentences.

**AFFIRMED.**