[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13602
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cr-00023-MW-CAS-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICIA VERNET,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 28, 2017)

Before HULL, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Following a jury trial, Defendant Patricia Vernet appeals her convictions for conspiracy to distribute and to possess with intent to distribute marijuana and cocaine and for distribution of cocaine. On appeal, Defendant argues that the district court committed error under *Bruton v. United States*, 391 U.S. 123 (1968), by admitting statements made by her non-testifying co-defendant during a pre-trial interview, without an opportunity for cross-examination. Defendant also challenges the district court's denial of her motion for a new trial. After careful review, we affirm.

## I.    BACKGROUND

### A.    Facts

The evidence produced at trial showed that, following a traffic stop in May 2014, officers found Timothy Watson in possession of five-and-a-half ounces of cocaine. Soon thereafter, Watson became a confidential source and informed officers that an individual named Charles Justice had been supplying him with multiple ounces of cocaine for approximately two years.

Though Watson called Justice each time he needed a new supply of cocaine, he did not always obtain the cocaine directly from Justice. Justice sometimes put him in contact with other people, including Defendant; Defendant's sister, co-defendant Shanyne Blanc; and an individual named "Punkin." And when Justice was in prison, Justice's friend, Chet Carey, supplied Watson with cocaine.

2

Because Justice lived in Fort Lauderdale, Justice paid Defendant and Blanc to assist him with his drug trafficking activities in Tallahassee. Defendant picked up money for Justice and held onto it until he traveled to Tallahassee, and made deposits to Justice's bank accounts. Defendant and Blanc also helped Justice transport drugs from Fort Lauderdale to Tallahassee. When Justice was not able to meet personally with Watson to deliver cocaine or with his other customer, Brian Dickerson, to whom he sold marijuana, Justice left the drugs with Defendant and Blanc and they delivered the drugs to the appropriate individuals.

Watson met with Defendant and/or Blanc approximately five times during the two-year period he obtained drugs from Justice. Watson would call Justice or Carey first, and they would put him in contact with Defendant. On the occasions that Watson met with Defendant and Blanc, he obtained approximately two ounces of cocaine. Although Watson met Defendant and Blanc in random locations, he had also been to their apartment to meet Justice. Watson engaged in at least one controlled purchase of cocaine from Defendant on August 15, 2014.

## B.    Procedural History

In July 2015, a federal grand jury issued an indictment against Defendant, Blanc, Justice, Carey, and Dickerson. The indictment charged Defendant with: (1) conspiracy to distribute and possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D), 846; and

3

(2) distribution of cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(C).   Defendant entered a plea of not guilty, and Defendant and Blanc were scheduled to be tried together.

Defendant later moved to sever her trial from Blanc's, arguing that severance was required because both Defendant and Blanc provided incriminating statements about each other when they were interviewed separately by a Drug Enforcement Administration ("DEA") agent.   According to Defendant, admission of both defendants' statements in a joint trial would violate her Sixth Amendment right to confront witnesses, in contravention of the Supreme Court's decision in *Bruton*.  In response, the Government reviewed the contents of Defendant and her sister's respective interviews and redacted any portions where Defendant or her sister referred to each other.   The Government also indicated that it only intended to offer into evidence the portions of the interviews where Defendant and Blanc discussed their own conduct.  Following a hearing on the motion, the district court denied Defendant's request for severance.

At the outset of trial, Defendant renewed her motion for severance, reiterating that her relationship with Blanc, the fact that they lived together, and the location of some of the drug transactions created *Bruton* issues.  The district court again denied Defendant's request for severance.

During opening arguments, the Government stated that the evidence would show that Defendant and Blanc served as a point of contact for Justice to deliver

4

drugs and receive payments through deposits to his bank accounts.    The Government also stated that drugs were dropped off or kept at Defendant and Blanc's home in Tallahassee.  In support of its case-in-chief, the Government presented testimony from, among others:  Officer Chris Poole; DEA Agent Mike Kreis; the confidential source, Watson; and Defendant's co-conspirators, Justice, Carey, and Dickerson.  In its closing argument, the Government stated that the jury should believe the testimony of Justice, Carey, and Dickerson because it was corroborated by the statements made by Defendant and Blanc during their pre-arrest interviews with DEA Agent Kreis.  The jury returned a guilty verdict against Defendant on all counts.

Defendant moved for a new trial, on the ground that she was prejudiced by her joint trial with Blanc.  She asserted that the Government's use of Blanc's statement in closing arguments to bolster the credibility of the Government's witnesses violated her Sixth Amendment rights because she was not able to cross-examine Blanc.  The district court denied the motion.

The district court sentenced Defendant to 12 months' imprisonment.    This appeal followed.

## II.    DISCUSSION

### A.    Motion to Sever Based on Alleged *Bruton* Violation

Defendant argues that the district court committed error under *Bruton v. United States*, 391 U.S. 123 (1968), by admitting the inculpatory statements Blanc made to DEA Agent Kreis in a pre-arrest interview because Defendant was unable to cross-examine Blanc about these statements.

We review the district court's evidentiary rulings, such as a ruling on a *Bruton* claim, for an abuse of discretion. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007); *United States v. Taylor*, 186 F.3d 1332 (11th Cir. 1999) (reviewing the denial of a motion for severance alleging *Bruton* error for an abuse of discretion).

The Constitution guarantees the accused in all criminal cases the right to confront witnesses against her.  U.S. Const. amend. VI.  In *Bruton*, the Supreme Court held that, in a joint trial, the Confrontation Clause is violated by the admission of a powerfully incriminating extrajudicial statement of a non-testifying co-defendant, regardless of whether the district court provides a curative instruction.  391 U.S. at 135–36.  In other words, a defendant's right to confront witnesses "is violated when the court admits a codefendant['s] statement that, in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt." *United States v. Schwartz*, 541 F.3d 1331, 1351 (11th Cir. 2008) (footnote omitted); *see also United States v. Butler*, 102 F.3d 1191, 1197

6

(11th Cir. 1997) ("Under *Bruton*, a non-testifying codefendant's statement is inadmissible if the statement facially incriminates another defendant.").

"If, however, the statement does not facially incriminate another defendant but merely becomes incriminating after being linked with evidence that is later introduced at trial, the statement may be introduced if redacted so as 'to eliminate not only the defendant's name, but any reference to his or her existence.'" *Butler*, 102 F.3d at 1197 (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). Nevertheless, a *Bruton* violation can occur when a confession is redacted in such a way that it facially incriminates a defendant without naming her. *See Gray v. Maryland*, 523 U.S. 185, 192–93 (1998). But replacing a defendant's name with neutral pronouns can be sufficient to obviate *Bruton* concerns if the statement does not directly implicate the defendant. *See Taylor*, 186 F.3d at 1336.

In the present case, Defendant's argument stems from the district court's admission of the redacted recording and transcript of Blanc's pre-arrest interview with DEA Agent Kreis. During her interview, Blanc told Agent Kreis that she lived at 1625 Centerville Road, number 40. She admitted that she had conducted transactions with an individual named "B" outside of her apartment. She also discussed delivering and picking up packages and making deposits for Justice. At one point, Agent Kreis said to Blanc, "So [Charles Justice] got out of jail and then he came up pretty soon after that, and came up here and delivered it to you guys?"

Blanc responded: "Mm, hm."  Blanc then stated that someone named "B" came to pick up the package that Justice had dropped off.

The admission of the above statements by Blanc did not violate Defendant's rights under the Confrontation Clause because these statements would not have compelled a reasonable person to infer Defendant's guilt.  *See Schwartz*, 541 F.3d at 1351.  Defendant takes issue with two of Blanc's statements in particular: (1) Blanc's reference to her address; and (2) Blanc's affirmative response to the allegation that Justice delivered a package to "you guys."  Blanc's recitation of her address, however, did not directly implicate Defendant.  Likewise, the reference to "you guys" did not compel a direct implication of Defendant's guilt.  *See Taylor*, 186 F.3d at 1336 ("Under our precedent, the admission of a co-defendant's statement that contains neutral pronouns does not violate the Confrontation Clause so long as the statement does not compel a direct implication of the defendant's guilt.").

Moreover, in the context of the portion of the interview presented to the jury, "you guys" was not most logically linked to Defendant.  *Cf. United States v. Bennett*, 848 F.2d 1134, 1142 (11th Cir. 1988) (concluding that the admission of a co-defendant's confession violated *Bruton* because the use of the pronoun "they" could most logically be understood to refer to the defendants).   Defendant was only mentioned one time throughout the interview:  when Agent Kreis asked Blanc

which car Defendant drove.  Further, Blanc indicated that "B" picked up the package that she received from Justice.  Blanc also discussed delivering packages to "Punkin" and "Jim."  Therefore, it is possible that Agent Kreis's reference to "you guys" was referring to "Punkin," "Jim," or "B."

We are not persuaded by Defendant's argument that the admission of Blanc's statements, when viewed in conjunction with the evidence showing that Blanc and Defendant lived together and the Government's references in opening and closing arguments to Defendant and Blanc having worked together to distribute drugs, amounted to a *Bruton* violation.   Defendant and Blanc were tried jointly for conspiracy to distribute and possess with intent to distribute illegal drugs, and the Government merely alluded to the facts it intended to prove:  that Defendant and Blanc had engaged in drug transactions, sometimes at their apartment, and had acted together to further the conspiracy.  Moreover, the Government's opening argument did not invite the jury to consider Blanc's statements against Defendant.  And nothing in the opening or closing arguments linked the use of the neutral pronoun "you guys" to Defendant.  What's more, the evidence presented by the Government showed that Defendant and Blanc were not the only members of the conspiracy.  Therefore, Blanc's reference to "you guys" did not implicate Defendant any more than it implicated any of the other conspirators.  Finally, the district court provided a limiting instruction when the

9

interview statements were admitted into evidence. *See Taylor*, 186 F.3d at 1337 (implying that defendant's confrontation rights were not violated in part because the district court provided a limiting instruction at the time the statement was admitted into evidence).

Nevertheless, even if we concluded that a *Bruton* violation occurred, any error in admitting Blanc's statements was harmless beyond a reasonable doubt. We have explained that a *Bruton* error is harmless where "the properly admitted evidence of guilt [was] so overwhelming, and the prejudicial effect of the co-defendant's statement so insignificant, that beyond any reasonable doubt the improper use of the statement was harmless." *Turner*, 474 F.3d at 1275 (quotations omitted) (alteration in original).

The properly admitted evidence against Defendant was overwhelming. Defendant herself admitted in her interview with Agent Kreis to picking up and delivering packages and money on behalf of Justice. Further, numerous witnesses, including Justice, Watson, and Dickerson, corroborated Defendant's statements. Watson testified that he personally purchased cocaine from Defendant, and Officer Poole testified that he observed a female in a car registered to Defendant engage in the controlled sale of cocaine to Watson on August 15, 2014. Moreover, Dickerson testified that Defendant gave him a bag containing cocaine and marijuana. Justice further testified that Defendant had delivered drugs and

deposited money for him. Therefore, when viewed in light of the overwhelming evidence showing that Defendant conspired to possess and distribute illegal drugs, any potential *Bruton* error was insignificant, and therefore harmless.

### B.    Motion for New Trial Based on Alleged *Bruton* Violation

Defendant argues that the district court abused its discretion in denying her motion for a new trial based on the violation of her Sixth Amendment right to confrontation. She contends that she was prejudiced by the Government's assertion in closing arguments that Blanc's statements corroborated the testimony of Justice, Watson, and the other co-conspirators.

We review for an abuse of discretion the district court's denial of a motion for a new trial. *United States v. Sweat*, 555 F.3d 1364, 1367 (11th Cir. 2009). We have suggested that a closing argument can give rise to a *Bruton* violation where such a violation did not otherwise exist. *See Schwartz*, 541 F.3d at 1353 ("If the affidavit was insufficient to compel an inference of guilt based on the trial testimony alone, the inference was made inevitable—and therefore 'devastating'— when the prosecutor expressly made that connection for the jury in his closing argument."). However, a *Bruton* error arising in closing arguments does not mandate a new trial if the error was harmless beyond a reasonable doubt. *See id.*

Here, the district court did not abuse its discretion by denying Defendant's motion for a new trial based on the alleged *Bruton* error. In closing arguments, the

Government stated: "[T]he entire scenario that was laid out by those—Mr. Justice, Mr. Carey, Mr. Dickerson—was entirely corroborated and agreed with by Ms. Blanc and [Defendant] when they were asked those questions by Agent Kreis." The Government's closing argument did not compel an inference of Defendant's guilt based on Blanc's statements. *See Schwartz*, 541 F.3d at 1351. At most, the Government suggested that the jury should weigh the credibility of the testifying witnesses by comparing their testimony with the statements of Blanc and Defendant. The Government did not invite the jury to consider the statements of Blanc as evidence of Defendant's guilt, nor did the Government link Blanc's agreement with the allegation that Justice delivered a package to "you guys" to Defendant. Instead, the Government appears to have been inviting the jury to view each co-defendant's statements as self-inculpatory, especially in light of the district court's limiting instruction.

But in any event, even if the Government's closing argument had given rise to a *Bruton* error based on the admission of Blanc's statements, any error would have been harmless. As previously discussed, the properly admitted evidence against Defendant was overwhelming, such that any error in the admission of Blanc's statements was harmless beyond a reasonable doubt. *See supra*, Part II.A.

## III.    CONCLUSION

For the foregoing reasons, Defendant's convictions and sentence are

**AFFIRMED.**